UNITED STATED DISTRICT COURT
DISTRICT OF CONNECTICUT

JON M. FESSEL, M.D.    :  CIVIL NO.:  3:05 CV 01348 (SRU)

   Plaintiff      :

V           :

YALE UNIVERSITY HEALTH  :
SERVICES, ALAN GREENGLASS, :
PAUL GENECIN, MORESON KAPLAN,  :
RAVI DURVASULA,     :
KATHERINE MATZKIN    :

   Defendants     :  December 13, 2005

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

The defendants, Yale University Health Services ("YUHS"), Paul Genecin, M.D., Alan Greenglass, M.D., Moreson Kaplan, M.D., and Katherine Matzkin, submit this memorandum of law in support of their Motion to Dismiss.  The plaintiff's third, fourth, fifth and sixth causes of action should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction as they do not arise out of facts common to the federal causes of action.  If the Court chooses to exercise its jurisdiction over the plaintiff's pendent state law claims, the fifth and sixth causes of action should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## I. STATEMENT OF FACTS

The plaintiff, Jon M. Fessel, M.D. ("Fessel"), instituted the present action by way of complaint dated August 24, 2005.  The complaint alleges that Fessel was an employee of the defendant YUHS, which is a health care provider for students, faculty and employees of Yale

**DONAHUE, DURHAM & NOONAN, P.C.**
CONCEPT PARK   •   741 BOSTON POST ROAD
GUILFORD, CONNECTICUT 06437
TEL:  (203) 458-9168  •  FAX:  (203) 458-4424
JURIS NO. 415438

University.  (Complaint, ¶¶ 4 and 5.)  The individual defendants, Paul Genecin, M.D., Ravi Durvasula, M.D., Alan Greenglass, M.D., and Moreson Kaplan, M.D., are the Director, Medical Director, Chief of Internal Medicine and Associate Director for Clinical Affairs, respectively, of YUHS.  (Complaint, ¶ 6.)  Defendant Katherine Matzkin is an employee of the Human Resources Department of Yale University.  (Id.)

The complaint alleges that the plaintiff suffered a cardiac arrest in November of 1999, and thereafter suffered from cognitive impairment and depression. (Complaint, ¶¶ 13 and 14.)  Over the course of calendar year 2002, the plaintiff claims that his depression worsened and in January of 2003 he sought medical treatment for this condition.  (Complaint, ¶¶ 31, 32, 35.)  On January 16, 2003, the plaintiff advised YUHS for the first time that he could not come to work because of his psychiatric condition.  (Complaint, ¶ 35.)  The claim that the plaintiff was unable to work because of depression was first made after the commencement of an investigation by the State of Connecticut into questionable prescription writing practices on the part of Dr. Fessel.  In this regard, the State initiated an investigation into Dr. Fessel's practice of prescribing narcotic medication for two individuals over an extended period of time; one of these had never been a patient of Dr. Fessel's and the other ceased being a patient long before the State's investigation.  The complaint alleges that on January 27, 2003, the plaintiff was asked to come into work to attend a meeting with defendants Dr. Greenglass, Dr. Durvasula and Ms. Matzkin.  (Complaint, ¶¶ 37 and 38.)  At this meeting the plaintiff was allegedly asked about prescriptions that he wrote for Maria Mendizabal, who was being treated by another  physician at YUHS and John Bell, who was no longer a patient

2

of YUHS.  (Complaint, ¶¶ 39 and 40.)   The complaint further alleges that following this meeting, the plaintiff's request for a disability leave was granted.  (Complaint, ¶ 44.)

Pursuant to Yale University procedures, the plaintiff was allowed to remain on leave for a full year, after which his employment was terminated.[1]  The complaint alleges that in April, 2004, three months after the plaintiff's leave of absence had expired, the plaintiff attempted to return to work and was not allowed to do so.  (Complaint, ¶ 53.)

The first cause of action in the plaintiff's complaint alleges that YUHS discriminated against the plaintiff by taking adverse employment actions against him on the basis of his age and by treating him differently than younger counterparts in violation of the Age Discrimination in Employment Act ("ADEA") and the Connecticut Human Rights Statutes. (Complaint, ¶ 57.)   Plaintiff's second cause of action alleges that he was discriminated against by YUHS based upon his disability in that he was not allowed reasonable accommodations and was treated differently than those without a disability in violation of the Americans with Disabilities Act of 1990 ("ADA") and the Connecticut Human Rights Statutes.  (Complaint, ¶ 60.)

In the third and fourth causes of action, the plaintiff alleges breach of contract and breach of the covenant of good faith and fair dealing.  The plaintiff alleges that YUHS breached his employment contract by failing to reappoint the plaintiff as it was required to do, and instead attempted to terminate the plaintiff without cause.  (Complaint, ¶ 64.)  The

---

[1] In an effort to assist plaintiff with his application for long term disability benefits, the University actually extended his leave for an additional month.

complaint further alleges that YUHS acted unfairly in not reappointing plaintiff to his position, claiming that this was a breach of the covenant of good faith and fair dealings. (Complaint, ¶ 66.)

While the first four counts have been brought against YUHS only, the fifth and sixth causes of action are directed against all of the defendants and state claims for the intentional and negligent infliction of emotional distress.

As will be discussed more fully below, the third through sixth causes of action should be dismissed as they do not arise out of a common nucleus of operative fact with the federal claims contained in the first and second causes of action.  Should the court choose to exercise its supplemental jurisdiction over the state law claims, the fifth and sixth causes of action should nonetheless be dismissed because they do not properly allege causes of action under state law.

## II.    <u>ARGUMENT</u>

### A.    <u>Legal Standard</u>

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." <u>Makarova v. United States</u>, 201 F.3d 110, 113 (2nd Cir. 2000).  <u>See</u> <u>also</u> Fed. R. Civ. P. 12(b)(1).  The burden rests on the party invoking the court's authority to establish that the court possesses subject matter jurisdiction over the action.  <u>See</u> <u>Shenandoah v. Halbritter</u>, 366 F.3d 89, 91 (2nd Cir. 2004); <u>Sullivan v. Metro-North Railroad Co.</u>, 179 F. Supp. 2d 2, 4 (D.Conn 2002).   That party must show by a preponderance of the evidence that subject

matter jurisdiction exists.  See Luckett v. Bure, 290 F.3d 493, 497 (2nd Cir. 2002).  In reviewing a motion to dismiss for lack of subject matter jurisdiction, a court may consider material outside the complaint.  See Makarova, supra, 201 F.3d at 113; Europe and Overseas Commodity Traders, S.A. v. Banque Paribas London, 147 F.3d 118, 121 n. 1 (2nd Cir. 1998).

In deciding a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded factual allegations of the complaint and draws all reasonable inferences in favor of the pleader.  Levy v. Southbrook International Investments, Ltd., 263 F.3d 10, 14 (2nd Cir. 2001).  "[D]ismissal is appropriate if the plaintiff can prove no set of facts that would entitle him to relief."  Id., citing Cooper v. Parsky, 140 F.3d 433, 440 (2nd Cir. 1998).  To avoid dismissal, a plaintiff must do more than plead mere "conclusory allegations or legal conclusions masquerading as factual conclusions. . . . The point at which conclusory allegations become valid pleadings lies where the plaintiff has asserted sufficient facts that, when construed liberally, allow the inference of a violation."  (Citations omitted; internal quotation marks omitted.)  Plumey v. New York State, 389 F. Supp. 2d 491 (S.D.N.Y. 2005).  See also Gregory v. Daly, 243 F.3d 687, 692 (2nd Cir.2001).

**B.    This Court Should Not Exercise Supplemental Jurisdiction Over the Plaintiff's State Law Claims.**

Plaintiff's state law claims should be dismissed for lack of subject matter jurisdiction because they are not so related to the federal claims as to form part of the same case or controversy.  The plaintiff's ADEA and ADA claims provide the basis for the District Court's jurisdiction over the present action. The plaintiff's state law claims for infliction of

emotional distress, breach of contract and breach of the covenant of good faith and fair dealing involve different issues of proof and damages and are best left to the state courts.

The exercise of supplemental jurisdiction is governed by 28 U.S.C. § 1367, which provides in pertinent part that, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). See also United Mine Workers v. Gibbs, 383 U.S. 715, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966). 28 U.S.C. § 1367 is a codification of the concept of supplemental jurisdiction, which "has its origins in the judicial doctrine of pendent jurisdiction, discussed by the United States Supreme Court in United Mine Workers v. Gibbs, [supra, 383 U.S. 715, 725-29]." Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305 (2nd Cir. 2003).

A federal court "has jurisdiction over an entire action, including state-law claims, whenever the federal-law claims and state-law claims in the case 'derive from a common nucleus of operative fact' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.'" Id., citing Gibbs, supra, 383 U.S. at 725. In deciding whether to exercise its supplemental jurisdiction, a district court "is required to consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity . . . ." (Internal quotation marks omitted.) Block v. First Blood Associates, 988 F.2d 344, 351 (2nd Cir. 1993). See also Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988). "Needless decisions

of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." (Internal quotation marks omitted.) Seabrook v. Jacobson, 153 F.3d 70, 72 (2nd Cir. 1998). Additionally, "there may be reasons independent of jurisdictional considerations, such as the likelihood of jury confusion in treating divergent legal theories of relief, that would justify separating state and federal claims for trial. . . . If so, jurisdiction should ordinarily be refused." Gibbs, supra, 383 U.S. at 726.

In deciding whether a state law claim arises from the same operative facts as the claim conferring jurisdiction, the federal courts generally consider "whether the claims arise from the same facts, or involve similar occurrences, witnesses or evidence." Hudson v. Delta Air Lines, Inc., 90 F.3d 451, 455 (11th Cir. 1996). See also Smylis v. City of New York, 983 F. Supp. 478, 484 (S.D.N.Y. 1997). One example is Cormier v. Funtown/Splashtown USA, Inc., 294 F. Supp. 2d 125, 128 (D.Maine 2003), in which the plaintiff employee brought suit against her employer alleging discrimination in violation of 42 U.S.C. § 2000e and state law claims of breach of fiduciary duty, intentional misrepresentation, breach of contract and violation of a state statute. The defendants filed a counterclaim asserting state law claims of breach of fiduciary duty, violation of confidential relations, conversion, libel and slander, and failure to pay debts. Id. The plaintiff sought dismissal of the state law claims contained in her own complaint and all the counts of the counterclaim on the ground that those claims did not arise out of a nucleus of operative fact common to that of the federal discrimination claim. Id. at 129. In finding that it did not have jurisdiction over the state law claims, the

court reasoned that those claims "rely significantly on facts not involved in determination of the discrimination claim.  From all that appears, the witnesses may essentially be different on the state and federal claims as well."  <u>Id</u>. at 130.

The District Court of Connecticut has previously declined to exercise pendent jurisdiction over state law claims similar to those of the present case, in the context of discrimination actions involving termination of the plaintiff's employment.  <u>See</u> <u>DeLoreto v. Ment</u>, 944 F. Supp. 1023, 1035-36 (D.Conn. 1996); <u>Koehler v. Chesebrough-Ponds, Inc.</u>, 705 F. Supp. 721, 722-25 (D.Conn. 1988); <u>Brokke v. Stauffer Chemical Co.</u>, 703 F. Supp. 215, 217-19 (D.Conn. 1988); <u>Billings v. Stone & Webster Engineering Corp.</u>, 678 F. Supp. 984, 986-87 (D.Conn. 1988).

In <u>Glasser v. Group W Satellite Communications</u>, No. B-89-664, 1990 WL 128563 (D.Conn. Jul. 11, 1990) (Eginton, J.), the plaintiff brought suit against his employer alleging that he was terminated in violation of the ADEA and that his termination constituted a breach of his employment contract.  The defendant employer moved to dismiss the state law breach of contract claim on the ground that it did not arise out of the same operative facts as the ADEA claim.  <u>Id</u>. at *1.  Judge Eginton agreed with the defendant, stating: "Plaintiff's claim is based upon an alleged violation of the ADEA.  If the Court were to exercise pendent jurisdiction over the breach of contract claim it would involve inquiry into facts having nothing to do with the age discrimination claim and into areas of state law which are best left to state judicial authorities."  <u>Id</u>. at *2.   The same factors favor dismissal of the present state claims.

Similarly, in <u>Burgess v. Omar</u>, 345 F. Supp. 2d 369, 370 (S.D.N.Y. 2004), the court dismissed state law claims alleging, <u>inter alia</u>, breach of fiduciary duty, misappropriation and waste, stating: "[W]hile there may be some facts that are common to both the [state and federal claims], the complaint and these counterclaims do not arise out of a common nucleus of operative fact.   Put another way, while facts relevant to one claim might provide background with respect to the other, more is required." <u>Id</u>. at 371-72.

As to supplemental jurisdiction over emotional distress claims, Judge Dorsey in <u>Billings</u>, <u>supra</u>, 678 F. Supp. 984, declined to exercise pendent jurisdiction over several state law claims, including one for the intentional infliction of emotional distress. Contrasting the Title VII claim with the state claims, Judge Dorsey noted:

> To recover on her intentional infliction of emotional distress claim, plaintiff would have to submit proof focusing on the manner in which she was fired, rather than the reason that she was fired, which is the focus of Title VII. Similarly, while proof of emotional distress is essential to the tort claim, a plaintiff may not recover damages for emotional distress under Title VII. Thus, [the intentional infliction of emotional distress claim] additionally presents the possibility of confusion of the issues and complication of the presentation and resolution of the case.

<u>Billings</u>, <u>supra</u>, 678 F.Supp. at 987.  Also, in <u>Spencer v. Banco Real, S.A.</u>, 623 F. Supp. 1008 (D.C.N.Y. 1985), the court dismissed state law claims for intentional infliction of emotional distress, defamation and abuse of process, finding that they were "markedly different than the underlying federal discrimination claim." <u>Id</u>. at 1012-13.

This Court has cited concerns about potential juror confusion when an emotional distress claim is brought with an ADEA claim.  In <u>Snyder v. J. M. Ney Company</u>, 51 FEP Cases 1307, 1987 WL 14970 (D.Conn. 1987), Judge Cabranes rejected the plaintiff's

argument that potential confusion could be avoided or minimized, stating: "[A]llowing a claim for emotional distress in the same action as [an] ADEA claim would tend to produce jury confusion and prejudice. . . . [S]uch confusion and prejudice could not be controlled by the use of special verdict forms." Id. at *4.  See also Koehler, supra, 705 F. Supp. at 722-723 (D.Conn. 1988).

In Koehler, supra, 705 F. Supp 721, the court dealt with circumstances similar to the present case.  The plaintiff in Koehler brought a claim for an ADEA violation as well as state law claims for breach of contract, promissory estoppel, intentional infliction of emotional distress and abusive discharge in contravention of Connecticut's Fair Employment Practices Act. In dismissing all the pendent state law claims, Judge Burns reasoned:

> **First, the remedies available under plaintiff's state law claims differ from those available under the ADEA.** It is well settled that a plaintiff may not recover compensatory or punitive damages under the ADEA. . . . Nor is the plaintiff entitled to recover for emotional distress in an ADEA suit. . . . Thus in exercising pendent jurisdiction, plaintiff would be permitted to pursue remedies which are not available under the ADEA. . . . The possibility of inconsistent results would also not serve the interests of judicial economy or fairness to the litigants. **Second, there is a difference in the issues presented and the proof required in plaintiff's claims.** To succeed on his ADEA action, plaintiff will need to submit evidence of defendant's discriminatory conduct. However, additional evidence will be required to prove plaintiff's pendent claims, thus enlarging the scope of the trial here. . . . As to his emotional distress claim in Count IV, plaintiff would be required to submit proof of his mental state."

(Emphasis in original; citations omitted)  Id. at 723-24.  The court in Koehler also recognized that "[i]n this district, the courts have been particularly reluctant to exercise pendent

10

jurisdiction over state law claims in ADEA suits."  Id. at 722.  See also Glasser, supra, 1990 WL 128563 at *2; Douglas v. American Cyanamid Co., 472 F. Supp. 298 (D.Conn. 1979); Sperry v. Post Publishing Co., No. B-90-140, 1990 WL 128238 (D.Conn. Jul. 12, 1990) (Eginton, J.).

While 28 U.S.C. § 1367(a) allows pendent party jurisdiction where the claim in question arises out of the same set of facts as the federal cause of action, the court must nonetheless consider fairness to the litigants.  Correspondent Services Corp. v. First Equities Corporation of Florida, 338 F.3d 119, 126 (2d Cir. 2003).  See also Sullivan v. Stein, No. 3:03CV1203, 2004 WL 1179351 (D.Conn. May 21, 2004) (Kravitz, J.).   The defendants Dr. Greenglass, Dr.Genecin, Dr. Kaplan, Dr. Durvasula and Ms. Matzkin are not named in the federal causes of action.  It would be unfair for these litigants to have to defend themselves in federal court against claims based entirely on state law.  Also, the fact that these defendants are not part of the federal causes of action further tends to show that the state and federal claims do not arise out of a common nucleus of operative fact.

Courts in other jurisdictions have similarly declined to retain jurisdiction over state law claims.  See Ramos v. U.S. Department of Housing and Urban Development, No. 96Civ5552, 1997 WL 589008, *6 (S.D.N.Y. Sep. 19, 1997) (holding that breach of contract claim does not share a common nucleus of operative fact with Federal Housing Act claim, as they involve "entirely separate questions"); Semi-Tech Litigation, LLC v. Bankers Trust Co., 234 F. Supp. 2d 297, 300 (S.D.N.Y. 2002) (motion to dismiss granted where resolution of state law claims involved issues "irrelevant" to lone federal claim); Learnard v. Inhabitants

of Town of Van Buren, 182 F. Supp. 2d 115, 127 (D.Me. 2002) (plaintiff's allegations of violation of the Maine Civil Rights Act, civil conspiracy, defamation, intentional infliction of emotional distress, and invasion of privacy "all rely at least partially on facts other than" those relevant to federal due process claim); Singh v. George Washington University, 368 F. Supp. 2d 58, 72 (D.D.C. 2005) (counterclaim alleging defamation dismissed where it had "almost no factual or legal overlap" with plaintiff's discrimination claim under the Americans with Disabilities Act).

In the present case, plaintiff's state law claims rely on facts that are not relevant to his ADEA and ADA claims.  Therefore, the federal and state claims do not arise out of a common nucleus of operative fact.  "In order to establish a disparate treatment claim under the ADEA, an employee must make a prima facie case of discrimination . . . by showing: (1) that the employee is a member of the protected class, (2) that the employee is qualified for the position, (3) that the employee suffered adverse employment action, and (4) that the circumstances surrounding the action give rise to an inference of age discrimination." Abrahamson v. Board of Education of Wappingers Falls Cent. School Dist., 374 F.3d 66, 71 (2nd Cir. 2004).  Similarly, " [T]he prima facie burden [on an ADA claim] requires a showing that (1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations."  Rodal v. Anesthesia Group of Onondaga, P.C., 369 F.3d 113, 118 (2nd Cir. 2004).

The elements required to prove claims under the ADEA and ADA are completely separate from those required to prove the plaintiff's state law claims.  The plaintiff's claims for breach of contract and breach of the covenant of good faith and fair dealing will focus on the terms of the plaintiff's employment contract and whether those terms were violated.  On the other hand, the focus of the plaintiff's federal discrimination claims will be on the defendant's treatment of the plaintiff as it compares to other similarly situated employees.  As to the emotional distress claims, the reason behind the plaintiff's termination it is of no moment; all that is relevant as to those causes of action is whether his termination was conducted in an unreasonable or outrageous *manner*.  (See § C. below.)  In other words, the plaintiff's federal claims are based on the <u>reason</u> behind his termination, while the state law emotional distress claims focus on the <u>manner</u> in which the termination was effected.  As will be discussed below, the reason for the termination is entirely irrelevant to the state law claims.  The issue of whether the defendants breached an employment contract or inflicted emotional distress offers no insight into whether the plaintiff has been the victim of unlawful discrimination.   <u>See</u> <u>Singh v. George Washington University</u>, 368 F. Supp. 2d at 72.  Furthermore, if the plaintiff's state and federal claims are tried at the same time, there is a substantial risk of juror confusion.  Therefore, pursuant to 28 U.S.C. § 1367(a), the plaintiff's third, fourth, fifth and sixth causes of action should be dismissed for lack of subject matter jurisdiction.

**C.      Plaintiff's Fifth and Sixth Causes of Action Should Be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted.**

1.      Plaintiff has Failed to State a Claim for Intentional Infliction of Emotional Distress.

In the fifth cause of action, the plaintiff alleges that the defendants intentionally inflicted emotional distress on him by their outrageous conduct.  In order to state a claim for the intentional infliction of emotional distress, the plaintiff must establish: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe."  (Internal quotation marks omitted.) Appleton v. Board of Education, 254 Conn. 205, 210, 757 A.2d 1059 (2000), citing Petyan v. Ellis, 200 Conn. 243, 253, 510 A.2d 1337 (1986).  As discussed in greater detail below, the plaintiff has failed to state a claim for intentional infliction of emotional distress because he has not identified any conduct by the defendants that could be considered extreme and outrageous.  Furthermore, the plaintiff has failed to allege that his emotional distress was severe in that the complaint lacks *any* allegations of symptoms or consequences of his alleged emotional distress.

i.      *Plaintiff has failed to allege conduct that is extreme and outrageous.*

To properly state a claim for the intentional infliction of emotional distress, the plaintiff must allege conduct that is extreme and outrageous.  Appleton, supra, 254 Conn. 210.  "Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional

infliction of emotional distress. . . . [T]here is liability for conduct exceeding all bounds usually tolerated by a decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a serious kind."  Mellaly v. Eastman Kodak Company, 42 Conn. Supp. 17, 19-20 (Conn. Super. Ct. July 11, 1991) (Berdon, J.), quoting W. Prosser & W. Keeton, Torts § 12, p. 60 (5th ed. 1984).  "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"  Id., quoting Restatement (Second), Torts, § 46, cmt. d.  See also Carrol v. Allstate Insurance Co., 262 Conn. 433, 443, 815 A.2d 119 (2003).  "The plaintiff must allege and prove conduct considerably more egregious than that experienced in the rough and tumble of everyday life."  Whelan v. Whelan, 41 Conn. Supp. 519, 522 (Conn. Super. Ct. Jan. 15, 1991) (Blue, J.).  "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Id. at 523.  Indeed, "[m]ere insults, indignities, or annoyances that are not extreme and outrageous will not suffice."  Brown v. Ellis, 40 Conn. Supp. 165, 167 (1984).

The Connecticut Supreme Court and the Connecticut Appellate Court have both held that it is for the trial court to determine in the first instance whether the alleged conduct of a defendant may, as a matter of law, be found to satisfy the elements of an intentional infliction

claim.  Thus, in Appleton, supra, 254 Conn. at 210, the Supreme Court held: "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. . . . Only where reasonable minds [may] disagree does it become an issue for the jury." See also Ancona v. Manafort Bros., Inc., 56 Conn. App. 701, 712 (2000) ("'Whether the defendant's conduct and the plaintiff's resulting distress are sufficient to satisfy . . . these elements is a question, in the first instance, for [the] court.'"), quoting Bell v. Board of Education, 55 Conn. App. 400, 409-10 (1999); Petyan v. Ellis, supra, 200 Conn. at 254 (upholding a directed verdict on intentional infliction of emotional distress claim, stating, "We agree with the trial court's conclusion that the defendant's conduct could not be considered outrageous"); Restatement (Second) Torts, § 46, cmt. h ("It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery").

As with negligent infliction claims, Connecticut trial courts routinely dismiss claims of intentional infliction of emotional distress where the allegations are insufficient to constitute "extreme and outrageous" conduct.  See, e.g., DeCorso v. Watchtower Bible, No. CV980145296S, 2002 WL 172663, at *4  (Conn. Super. Ct. Jan. 8, 2002) (Holzberg, J.); Silva v. New York Life Ins. Co., No. CV970342973S, 2001 WL 100325, at *6 (Conn. Super. Ct. Jan. 12, 2001) (Skolnick, J.).  Indeed, the Appellate Court flatly rejected the argument that a trial court cannot dispose of an intentional infliction claim on a motion to strike.  See Dollard v. Board of Education, 63 Conn. App. 550, 551 n. 2 (2001) ("[T]he plaintiff . . . argues that it is per se improper for a trial court to dispose of a claim of intentional infliction

of emotional distress by way of a motion to strike.  We know of no authority that supports the plaintiff's proposition and note that this court previously has affirmed the granting of a motion to strike a claim for intentional infliction of emotional distress.").

Factual scenarios in which plaintiffs have suffered truly degrading and mean-spirited behavior by the defendant employer repeatedly have been found to have fallen short of the level required to constitute "extreme and outrageous" conduct.  Viewing the unremarkable circumstances alleged in the present case against the backdrop of some of these cases highlights the deficiency of the present plaintiff's claim.

In Appleton, supra, 254 Conn. 205, the Supreme Court reversed the Appellate Court's decision that the defendant employer had not been entitled to summary judgment.  The plaintiff, a teacher, claimed that the school principal made condescending comments to her in front of co-workers, questioning her vision and ability to read; telephoned her daughter to say that the plaintiff had been acting differently and should take some time off work; and called the police to escort her out of the building.  Appleton, supra, 254 Conn. at 211.  The plaintiff also asserted that she had been subjected to two psychiatric examinations at the request of the school board; forced to take a suspension and leave of absence; and ultimately forced to resign.  See id.  Noting that "we do not condone [the defendants'] treatment of a longtime colleague and teacher," the court found this conduct "not so atrocious as to exceed all bounds usually tolerated by decent society" and therefore insufficient to be actionable.  Id. at 212, n.1.  In contrast, the present plaintiff was not subjected to condescending comments

in front of colleagues, calls to his family, a police escort out of the building where he worked, or forced psychiatric exams.

In <u>Stepney v. Deveroux Foundation</u>, No. CV 0065885, 1995 WL 441928 (Conn. Super. Ct. July 17, 1995) (Pickett, J.), the plaintiff filed an action for intentional infliction of emotional distress due to the intense harassment she received when she announced her intention to pursue workers' compensation benefits from her employer.  The harassment eventually led to the plaintiff's resignation from her employment.  Although the plaintiff considered the conduct of her employer "extreme and outrageous," the court held that the plaintiff failed "to allege a sufficient factual basis for the Court to conclude that the defendant's actions constituted extreme and outrageous conduct" and granted the defendant's motion to strike.  <u>Id</u>. at *5.  <u>See</u> <u>also</u> <u>Dollard v. Board of Education</u>, <u>supra</u>, 63 Conn. App. 550 (allegations that the defendants jointly engaged in a concerted plan and effort to force the plaintiff to resign from her position or to become so distraught that they would have a colorable basis for terminating her employment, and carried out their plan by hypercritically examining every small detail of her professional and personal conduct, transferred the plaintiff to a school where she did not want to be assigned and then secretly hired someone to replace her at the school from which she had been transferred, publicly admonished the plaintiff for chewing gum, being habitually late, being disorganized and not using her time well, and unnecessarily placed the plaintiff under intensive supervision, while it "may have been distressful and hurtful," did not suffice to state an emotional distress claim).

Superior Court decisions have routinely stricken claims in the employment context when the plaintiff has failed to state sufficient facts from which it could be concluded that the defendant had engaged in extreme and outrageous conduct toward the plaintiff.  See, e.g., Lucuk v. Cook, No. CV 950050210S, 1998 WL 67412 (Conn. Super. Ct. Feb. 11, 1998), (Corradino, J.) (finding that an allegation that defendant labeled plaintiff a "rat" and "informer" in union meetings insufficient for "extreme and outrageous" conduct; opinion includes extensive survey of instances in which offensive conduct found insufficient); Muniz v. Kravis, No. CV 94 0065789, 1995 WL 542120 (Conn. Super. Ct. Sept. 6, 1995) (Pickett, J.) (holding that the use of an armed security guard to notify the plaintiffs of their termination when one plaintiff was on a planned vacation and another just returned from surgery could not support the claim that the defendants engaged in extreme and outrageous conduct); Barbuto v. William Backus Hosp., No. 105452, 1995 WL 235068 (Conn. Super. Ct. April 13, 1995) (Hendel, J.) (finding that plaintiff's discharge from employment despite assurances to the contrary does not rise to the level of extreme and outrageous conduct); Emanuele v. Boccaccio & Susanin, Inc., No. CV 90 0379367, 1992 WL 79823 (Conn. Super. Ct. April 10, 1992) (Miano, J.) (holding that the discharge of an at-will employee for false and non-existent reasons to deprive the plaintiff of compensation and in contravention of defendant's procedure is not extreme and outrageous conduct); Neuharth v. Connecticut Institute for the Blind, 3 Conn. L. Rptr. 360 (March 8, 1991) (Dunn, J.) (employer's dismissal of plaintiff, despite oral assurances that it would not, is not extreme and outrageous).

Federal decisions applying Connecticut law in the employment context have likewise demonstrated that the alleged conduct must go beyond all possible bounds of decency and be regarded as atrocious to state a valid cause of action for the intentional infliction of emotional distress.  See Ziobro v. Connecticut Institute for the Blind, 818 F. Supp. 497, 502 (D. Conn. 1993).  In Reed v. Signode Corp., 652 F. Supp. 129 (D. Conn. 1985), the plaintiff charged that his employer intentionally inflicted emotional distress upon him when it denied his request for a leave of absence in order that he undergo treatment for cancer and when, allegedly on the basis of age, it refused to rehire him following his medical treatment.  In granting the defendant's motion for summary judgment, the District Court ruled that the conduct attributed to the defendant did not exceed "all bounds usually tolerated by decent society" and could not be "reasonably regarded as outrageous."  Id. at 137.

In Collins v. Gulf Oil Corp., 605 F. Supp. 1519 (D. Conn. 1985), a former employee, who was a citizen of the United Kingdom, accepted employment in the United States, but was discharged less than a year after he had relocated his family to Connecticut.  This resulted in the revocation of his and his wife's visa.  The plaintiff alleged that his employer intentionally and negligently inflicted great emotional distress upon him and his family in sponsoring his visa, in failing to comply with established performance evaluation procedures, in representing that his employment would extend three years, and in terminating his employment with the knowledge that it would result in the automatic revocation of his visa. The District Court ruled that the plaintiff had not stated a claim for intentional infliction of emotional distress because the plaintiff did not complain that there was anything egregious or

unconscionable about the *manner* of his termination, only that his employer's motive for such action was improper.  Id. at 1521-22.  See also Ericson v. City of Meriden, 113 F. Supp. 2d 276, 281-82, 292 (D. Conn. 2000) (Goettel, J.) (plaintiff alleged that co-workers watched sexually explicit videotape at work; that when she walked into the room where the video was being viewed, they commented, "Look at Donna, she's blushing" and "She's too old to blush;" that after she complained, the co-workers refused to speak to her, and her supervisor began removing some of her duties; that she received threatening phone calls at home; that the co-workers harassed her, yelled obscenities, and vandalized her car and personal property; that her supervisor transferred her to an undesirable location; court stated that the conduct "may be offensive but cannot be said to be atrocious or utterly intolerable by society"); Thomas v. St. Francis Hospital and Medical Center, 990 F. Supp. 81, 91 (D.Conn. 1998) (Goettel, J.) (supervisor's asking plaintiff how she, "a black, single mother" could go away on vacation and how a "single mother" could afford to send her child to a private school held insufficient to support a claim of negligent infliction of emotional distress).

In Miner v. Town of Cheshire, 126 F. Supp. 2d 184 (D.Conn. 2000) (Underhill, J.), this Court recognized that in the "employment context, it is the employer's conduct, not the motive behind the conduct, that must be extreme and outrageous. … An employer's adverse yet routine employment action, even if improperly motivated, does not constitute extreme and outrageous behavior when the employer does not conduct that action in an egregious and oppressive manner."  Id. at 196.  In Miner, the plaintiff alleged that the defendant employer did not protect her from sexual harassment and forced her to resign because she exercised her

right to be free from sexual harassment.  The Court held that the alleged conduct was not extreme and outrageous noting, "in the absence of allegations of facts indicating that the Town conducted such activities in a humiliating, extreme, or outrageous manner, the complaint does not state a claim for intentional infliction of emotional distress." Id. at 195.

In Downing v. West Haven Board of Education, 162 F. Supp. 2d. 19 (D.Conn. 2001) (Underhill, J.), the plaintiff brought a claim against her employer for violation of her first amendment rights as well as a state law intentional infliction of emotional distress claim. The plaintiff in Downing was a school teacher who wore tee shirt to work with the words "Jesus 2000" prominently displayed on the front in capital letters.  Id. at 22.  The plaintiff alleged that the defendant's conduct was extreme and outrageous in that they required her to change or cover her tee shirt, pounded on her classroom door to get her attention, and notified the assistant superintendent before speaking to her.  Id. at 34.  The court held that no reasonable juror could conclude that the defendant's conduct was extreme and outrageous, because "courts have consistently held that indignities, annoyances, petty oppressions or conduct that displays bad manners or results in hurt feelings do not support a claim for intentional infliction of emotional distress." Id.

In Taylor v. Maxxim Medical, Inc., No. 3:99CV338, 2000 WL 630918 (D.Conn. Mar. 23, 2000) (Nevas, J.), the plaintiff brought a discrimination action against his employer for violation of the ADEA, and also stated a claim for intentional infliction of emotional distress under state law.  The plaintiff alleged that the defendants falsely accused him of disclosing trade secrets, took improper disciplinary action against him, blamed, harassed and

embarrassed him for the mistakes of others, ridiculed him, rejected his work and placed him on probation while he was on medical leave, all in an attempt to drive him from his employment because of his age.  Id. at *3.  Judge Nevas held that even construing these allegations in a light most favorable to the plaintiff, the defendants' acts did "not transgress bounds of socially tolerable behavior."  Id.

On facts much more compelling than those alleged by the present plaintiff, a claim of intentional infliction of emotional distress was dismissed on the ground that the complaint failed to meet the "extreme and outrageous" standard in Williams v. Perry, 960 F. Supp. 534 (D.Conn. 1996).  There, the plaintiff, a white female police officer, had married an African-American police officer working in another town.  Because of her interracial marriage, the plaintiff claimed that other officers in her department had referred to her as a "bitch" and "nigger lover."   In her complaint against the town, in addition to the alleged racial slurs, plaintiff alleged that she was told she "never would get anywhere in the department because of her relationship with an African American man," that she was disciplined more harshly and held to higher performance standards than her male counterparts, that she was assigned no work despite being available, and that she was given minor assignments which were considered beneath male officers.  Id. at 537. In dismissing plaintiff's pendent state claim for intentional infliction of emotional distress, Judge Covello found that "[t]he complaint fail[ed] to allege any conduct by the defendant that [was] 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious,

and utterly intolerable in a civilized community.'" <u>Id</u>. at 541, <u>quoting</u> <u>Ziobro</u>, <u>supra</u>, 818 F. Supp. at 502.

Because the plaintiff in the present case has failed to allege conduct of the type that would permit a jury to conclude that the defendants' actions were extreme and outrageous, this Court should strike his cause of action for intentional infliction of emotional distress. In fact, the plaintiff has not alleged *any* specific conduct that is extreme and outrageous. Rather, the plaintiff simply states in a conclusory fashion that the "defendants have intentionally inflicted emotional distress upon the plaintiff by their outrageous conduct." (Complaint, ¶ 69.) More is required in order to state a claim for intentional infliction of emotional distress. <u>See</u> <u>Dow v. Whitecraft, LLC</u>, No. 03 0082417, 2004 WL 2439858, *3 (Conn. Super. Ct. Sep. 28, 2004) (Scholl, J.) (granting motion to strike claim for intentional infliction of emotional distress where the complaint was "devoid of specific factual allegations" and instead consisted of "conclusory characterizations of conduct"); <u>Collins v. Gulf Oil Corp.</u>, <u>supra</u>, 605 F. Supp. at 1522.

The plaintiff alleges, in conclusory fashion, that he was discriminated against because of his age and disability and that he was denied reappointment to his previous position with YUHS while he was on disability leave. However, there is no allegation that the challenged actions were carried out in a <u>manner</u> that was so egregious or oppressive as to rise to the level of extreme and outrageous conduct. As noted above, it is the manner in which a termination is effected -- as opposed to the reason for the termination -- that must be evaluated in determining whether the defendant's conduct was extreme and outrageous. Any

alleged improper motive behind the decision not to renew plaintiff's employment after the expiration of his one year leave of absence cannot be the basis of an intentional infliction of emotional distress claim.  The Connecticut Supreme Court has noted: "The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior."  Parsons v. United Technologies Corp., 243 Conn. 66, 89, 700 A.2d 655 (1997).  See also Miner, supra, 126 F.Supp. 2d at 195.  The present complaint does not specifically allege any *conduct* on the part of the defendants that was extreme and outrageous.  Rather, he merely claims that the *reason* for the non-renewal of his employment was outrageous.  Under Connecticut law, the alleged wrongful motivation of the defendants simply does not give rise to a cause of action.  Accordingly, the plaintiff's claim for the intentional inflection of emotional distress must be stricken.

> ii.     *Plaintiff has not alleged emotional distress that can be considered severe.*

In addition to the plaintiff's failure to allege conduct which could be considered "extreme and outrageous," the plaintiff's intentional infliction of emotional distress claim fails to satisfy the fourth element necessary to state such a claim: that the resulting emotional injury to the plaintiff was "severe."  See Appleton, supra, 254 Conn. at 210.  The plaintiff must show that the defendants' conduct caused "mental distress of a very serious kind."  DeLaurentis, supra, 220 Conn. at 266-67.  A plaintiff's distress must rise to a level "which 'no reasonable [person] could be expected to endure….' 1 Restatement (Second), Torts, § 46, comment (j)."  Mellaly, supra, 42 Conn. Supp. at 21.  See also Clarke v. Diaz, No. 98 0163375, 1998 WL 481936, *4 (Conn. Super. Ct. Aug. 6, 1998) (Dandrea, J.).

It is important to observe that it is insufficient for the plaintiff to provide conclusory allegations of emotional distress; the plaintiff must offer specific factual allegations which would support the conclusion that the plaintiff's emotional distress was so severe that no reasonable person could be expected to endure it.  MacDonald v. Howard, 28 Conn. L. Rptr. 373 (Oct. 17, 2000) (Mintz, J.) (merely alleging 'extreme emotional distress' unsupported by factual allegations is legally insufficient) quoting Hart v. Mill Plain Autobody, Superior Court, Judicial District of Fairfield at Bridgeport, Docket No. 353463 (Dec. 3, 1999) (Melville, J.) ("merely stating that the alleged emotional distress is severe is an unsupported legal conclusion and it is subject to a motion to strike").

In the present case, the complaint merely alleges that "the plaintiff has suffered and continues to suffer emotional distress."  (Complaint, ¶ 54.)  This is not sufficient to satisfy the requirement that the plaintiff alleges emotional distress so severe that no reasonable person could be expected to endure it.  The complaint is silent as to the nature and extent of the alleged emotional distress, and therefore it is not possible to determine whether such emotional distress was in fact severe.  Even in cases where plaintiffs have alleged symptoms and manifestations of significant emotional distress, courts have found such allegations insufficient.  In Almonte v. Coca-Cola Bottling Co., 959 F. Supp. 569, 575-76 (D.Conn. 1997), the court rejected as legally insufficient symptoms of "sleeplessness, depression, [and] anxiety."  The court noted that the complaint must allege facts that, if proven, would demonstrate that the "plaintiff suffered these symptoms to an extraordinary degree."  Id. at 576.  See Reed v. Signode Corp., supra, 652 F. Supp. at 137 (feelings of incompetence from

failure to be rehired and emotional distress in having this fact broadcast to former associates is not "severe" emotional distress).

Because the plaintiff has failed to allege facts from which it could be concluded that he suffered emotional distress so severe that no reasonable person could be expected to endure it, his claim for intentional infliction of emotional distress must be stricken.

2.    Plaintiff has Failed to State a Claim for Negligent Infliction of Emotional Distress.

i.    *Plaintiff has not alleged that the manner of his termination was unreasonable.*

In his sixth cause of action, the plaintiff states a claim for negligent infliction of emotional distress.  "In order to recover on a claim of negligent infliction of emotional distress, the plaintiff must prove that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm." (Internal quotation marks omitted.) McNamara v. Tournament Players Club of Connecticut, 270 Conn. 179, 197, 851 A.2d 1154 (2004).  The Supreme Court has held that a claim for the negligent infliction of emotional distress in the employment context is narrowly circumscribed:

> Accordingly, negligent infliction of emotional distress in the employment context **arises only where it is based upon unreasonable conduct of the defendant in the termination process.   The mere termination of employment, even where it is wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress. The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior.**

Parsons v. United Technologies Corp., 243 Conn. 66, 700 A.2d 655 (1997). (Emphasis added; citations and internal quotation marks omitted.) Id. at 88-89.  The Connecticut Supreme Court has also held that no action may lie for negligent infliction of emotional distress that occurs *during* an employment relationship.  Perodeau v. City of Hartford, 259 Conn. 729, 792 A.2d 752 (2002).  In Perodeau, the Supreme Court held that an employee may not recover for the negligent infliction of emotional distress based on conduct occurring in the context of a continuing employment relationship, as distinguished from conduct occurring while the employee is being terminated.  See id. at 748-763. Perodeau involved the question of whether an individual municipal employee can be held liable to a co-worker for negligent infliction based on conduct occurring in the context of ongoing employment relationship.  Since the Perodeau decision was announced, the Superior Courts have been unanimous in holding that Connecticut law does not recognize a claim for the negligent infliction of emotional distress in the employment context other than a claim involving the manner of termination, whether the defendant be a municipality or a private employer.  Thus, the court in Dawkins v. Metallurgical Processing, Inc., No. CV010509657S, 2002 WL 31662309 (Conn. Super. Ct. Sept. 18, 2002) (Wiese, J.), held that Perodeau precludes holding *private employers* (in addition to individual employees) liable on such claims:

> [T]his court concludes that the Supreme Court's decision in [Perodeau] does not stand for the proposition that it is limited to claims brought only against individual employees and/or municipal defendants.  This court therefore declines the plaintiff's invitation to so limit the court's holding in that case.  The court notes further that other decisions of the Superior Court have not interpreted [Perodeau] to be so limited but rather have applied its holding to

preclude claims of negligent infliction of emotional distress brought against private employers.[2]

See id. at *6 (citing several other decisions holding that Perodeau applies to private employers).  See also, Brunson v. Bayer Corp., 237 F. Supp. 2d 192, 208 (D. Conn. 2002) (holding that the Perodeau holding applies equally to corporate employers, and noting that "every court applying the reasoning of Perodeau has recognized Perodeau as barring such a cause of action against corporate defendants.").

The following cases are to the same effect.  See, e.g., Mayo v. Yale University, No. CV000440145S, 2003 WL 21040666 (Conn. Super. Ct. April 16, 2003) (Thompson, J.); Absher v. Flexi International Software, Inc., No. 3:02CV171, 2003 WL 2002778 (D. Conn. April 10, 2003) (Nevas, J.); Raye v. Wesleyan University, No. CV0200998865S, 2003 WL 1962881 (Conn. Super. Ct. April 10, 2003) (Aurigemma, J.); Morrissey v. Yale University, No. 422906, 2003 WL 1962065 (Conn. Super. Ct. April 1, 2003) (Blue, J.); DeMaria v. Country Club of Fairfield, No. CV02365908S, 2003 WL 356700, at *3 (Conn. Super. Ct. Jan. 17, 2003) (Thim, J.); Mendez v. Von Roll Isola, Inc., No. CV020462113, 2002 WL 31686737, at *6 (Conn. Super. Ct. Nov. 12, 2002) (Arnold, J.); Dakers v. Danaher Tool Group, No. X07CV010079186S, 2002 WL 31465654 (Conn. Super. Ct. Oct. 16, 2002) (Sferazza, J.); Longley v. Suffield Academy, No. CV010809999S, 2002 WL 31461686 (Conn. Super. Ct. Oct. 15, 2002) (Beach, J.); Kachorowsky v. People's Bank, No. 558977, 2002 WL 31440880 (Conn. Super. Ct. Oct. 10, 2002) (Hurley, JTR); Kuhn v. People's Bank,

---

[2] Indeed, the defendants were unable to locate a single decision holding that the application of Perodeau is limited either to individual defendants (as opposed to employers), or municipal defendants.

No. CV010454638, 2002 WL 31440790 (Conn. Super. Ct. Oct. 7, 2002) (Thompson, J.); Dawkins v. Metallurgical Processing, Inc., No. CV010509657S, 2002 WL 31662309 (Conn. Super. Ct. Sept. 18, 2002) (Wiese, J.); Cole v. Moorehouse, No. CV990427337S, 2002 WL 31304178 (Conn. Super. Ct. Sept. 18, 2002) (Robinson-Thomas, J.); Saltzman v. Trailblazers Academy, Inc., No. CV020187929, 2002 WL 31255758 (Conn. Super. Ct. Sept. 10, 2002) (Lewis, J.); Kelly v. Seacorp, Inc., No. 550383, 2002 WL 31050779 (Conn. Super. Ct. Aug. 13, 2002) (Hurley, JTR); Day v. Seacorp, Inc., No. 550385, 2002 WL 31050891 (Conn. Super. Ct. Aug. 13, 2002) (Hurley, JTR); Gorra v. Seacorp, Inc., No. 550384, 2002 WL 31051041 (Conn. Super. Ct. Aug. 13, 2002) (Hurley, JTR); Pasik v. United Technologies Corp., No. CV94313396S, 2002 WL 31015476 (Conn. Super. Ct. Aug. 7, 2002) (Thim, J.); Boccuzzi v. Stamford Health System, No. CV010183441, 2002 WL 1041346 (Conn. Super. Ct. May 2, 2002) (Lewis, J.); Leone v. New England Communications, No. CV010509752S, 2002 WL 1008470 (Conn. Super. Ct.  April 10, 2002) (Quinn, J.) Martinez-Ruiz v. Centimark Corp., No. CV010510719S, 2002 WL 853605 (Conn. Super. Ct. April 9, 2002) (Quinn, J.).

The present plaintiff has failed to meet his burden of pleading unreasonable conduct by the defendants *during the termination process* that would be sufficient to hold the defendants liable for negligent infliction of emotional distress.   In fact, although the complaint contains the conclusory statement that the defendants "negligently inflicted emotional distress upon the plaintiff in the termination process," the plaintiff has failed to identify a single act by the defendants during the alleged termination that was

"unreasonable."  (Complaint, ¶ 72.)  The only factual allegation regarding the manner of the plaintiff's termination is that, while on disability leave, he was not reappointed to his previous position with YUHS in violation of his employment contract.  (Complaint, ¶ 53.) The essence of plaintiff's complaint is that the *motivation* was wrongful.  As the quoted language of the <u>Parsons</u> decision makes clear, that is insufficient to make out a cause of action.  Furthermore, the <u>Perodeau</u> decision established that the plaintiff may not rely on conduct that occurred during the course of his employment relationship with YUHS. Accordingly, the negligent infliction of emotional distress claims must be dismissed.

> ii.     *The conduct alleged in the complaint does not meet the Supreme Court's standard of unreasonable conduct.*

The Connecticut Supreme Court has endorsed the striking of negligent infliction claims where the allegations, even if true, are insufficient to establish the requisite level of unreasonableness.   <u>See</u> <u>Barrett v. Danbury Hospital</u>, 232 Conn. 242 (1995) (affirming summary judgment on negligent infliction claim).  Similarly, Connecticut trial courts have not hesitated to dispose of negligent infliction claims where the alleged conduct was not such that it could reasonably be found that "the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm."  <u>See, e.g.</u>, <u>Silva v. New York Life Ins. Co.</u>, No. CV970342973S, 2001 WL 100325, at *4 (Conn. Super. Ct. Jan. 12, 2001) (Skolnick, J.); <u>Rodriguez v. Host International, Inc.</u>, No. CV990585323, 2000 WL 1995589, at *7 (Conn. Super. Ct. Dec. 22, 2000) (Peck, J.); <u>Rosenberg v. Meriden Housing Authority</u>, No. CV 950377376, 1999 WL 1034611, at *10-11 (Conn. Super. Ct. Oct. 29, 1999) (Licari, J.);

Denault v. Connecticut General Life Ins. Co., No. CV 950050418S, 1999 WL 549454, at *16 (Conn. Super. Ct. June 29, 1999) (Corradino, J.); Dinegar v. University of New Haven, No. 378256, 1998 WL 892720 (Conn. Super. Ct. Dec. 15, 1998) (Levin, J.); Troche v. Smith, No. CV 950370542S, 1998 WL 516292, at *5-6 (Conn. Super. Ct. Aug. 6, 1998) (Silbert, J.).

In Pavliscak v. Bridgeport Hospital, 48 Conn. App. 580 (1997), cert. denied, 245 Conn. 911 (1998), the plaintiff was an at-will employee who was fired without advance warning.  After a verdict in favor of the plaintiff, the court found the evidence insufficient as a matter of law to satisfy the standard enunciated in Parsons and ruled that the trial court should have granted defendant's motion for directed verdict:

> There was no evidence that the defendant humiliated the plaintiff publicly. She was told in a private meeting with her supervisors that she was terminated effective immediately, and that she must take her personal items and leave the hospital premises.  **While there was undoubtedly some indignity involved with being involuntarily terminated, we cannot say that this rises to the level of unreasonable conduct that would justify liability based on negligent infliction of emotional distress.**  Therefore, we hold that the trial court was required to exercise its discretion to set aside the verdict on this count.  In fact, because we conclude that there was insufficient evidence in the record to support a finding of negligent infliction of emotional distress as a matter of law, the trial court should have directed a verdict in favor of the defendant.

Pavliscak, supra 48 Conn. App. at 598 (emphasis supplied).   Similarly, any indignity felt by the present plaintiff does not rise "to the level of unreasonable conduct that would justify liability based on negligent infliction of emotional distress."  Id.

In Miner, supra, 126 F. Supp. 2d at 197, the court recognized that the tort of negligent infliction of emotional distress must be "limited so as not to open up a wide vista of litigation in the field of bad manners, where relatively minor annoyances had better be dealt with by

instruments of social control other than the law."   (Internal quotation marks omitted.) Similar to the plaintiff in the present case, the plaintiff in Miner based her claim for negligent infliction of emotional distress on the same allegations as her discrimination claims.  The court dismissed the plaintiff's negligent infliction of emotional distress claim, finding allegations that her employer did not take appropriate steps to address alleged harassment, contested her workers' compensation claim, and did not appropriately respond to her complaints, insufficient as a matter of law.  Id. at 199.  The court stated that in "the absence of allegations of facts indicating that the Town conducted routine employment activities in a humiliating, extreme, or outrageous manner, the complaint does not state a claim for negligent infliction of emotional distress."  Id.  See also Hanna v. Infotech Contract Services, Inc., No. 3:01CV680, 2003 WL 2002773, *11 (D.Conn. April 21, 2003) (Underhill, J.) (granting summary judgment on plaintiff's negligent infliction of emotional distress claim where plaintiff did not allege facts nor provide evidence to support a finding that the manner in which he was fired could constitute negligent infliction of emotional distress.)

Courts have been careful to prevent negligent infliction of emotional distress claims from expanding beyond narrowly circumscribed limits.  The Connecticut Appellate Court upheld the trial court's grant of the defendant's motion for judgment notwithstanding the verdict where the trial court found "no evidence that the manner of the plaintiff's termination from employment was different in any way from the usual termination of employment or that it was done in any way that would cause anything more than the normal upset that would result from any termination of employment." Chieffalo v. Norden Systems, Inc., 49 Conn.

App. 474, 480-81 (1998).  In <u>Chieffalo</u>, the plaintiff had been fired in front of another employee and escorted out in view of approximately twenty other employees. The trial court found that the jury's award of $25,000 was unsupported because no evidence of unreasonable conduct by the defendant had been introduced.  Similarly, in the present case there is no allegation that the manner of termination of employment was different for the plaintiff than other employees.

Reflecting on this developing area of Connecticut law, Judge Goettel has stated:

We view this application of the doctrine of negligent infliction of emotional distress to employment relationships with some alarm.  On the job, emotional distress is not an uncommon occurrence. . . . Thus, to the extent that an independent tort of negligent infliction of emotional distress is recognized in employment terminations, it is imperative that it be narrowly circumscribed to cases of severe emotional distress resulting from egregious conduct by the employer.

<u>Malik v. Carrier Corp.</u>, 986 F. Supp. 86, 91-92 (D.Conn. 1997), <u>aff'd</u> <u>in</u> <u>part</u>, <u>rev'd</u> <u>in</u> <u>part</u>, 202 F.3d 97 (2d Cir. 2000), (holding that an emotional distress claim must fail as a matter of law because it was based on sexual harassment investigation required by federal law).

In the present case, the plaintiff has failed to allege any facts that would suggest humiliating, embarrassing or otherwise unreasonable conduct by the defendants *at the time the plaintiff was terminated*.  To the contrary, the plaintiff was simply not rehired after he exhausted his one year disability leave.  Since there is no allegation that the defendants engaged in unreasonable behavior in connection with the manner in which plaintiff was terminated, this claim must be dismissed.

iii.     *The plaintiff has failed to allege that any of the defendants should have realized that their alleged conduct involved an*

*unreasonable risk of causing emotional distress that might result in illness or bodily harm.*

Even if the plaintiff had alleged that the manner of his termination was unreasonable, his negligent infliction of emotional distress claim still must be stricken because he has failed to allege that the defendants should have realized that their conduct created an unreasonable risk of causing emotional distress which might result in illness or bodily harm.  "[I]n order to state such a claim [for negligent infliction of emotional distress], the plaintiff has the burden of pleading that 'the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that distress, if it were caused, might result in illness or bodily harm'."  Parsons v. United Technologies Corp., supra, 243 Conn. at 88, quoting Montinieri v. Southern New England Telephone Company, 175 Conn. 337, 345 (1978).  Nowhere in the plaintiff's complaint is there any allegation against any of the defendants that they should have realized that their alleged conduct involved an unreasonable risk of causing emotional distress and that distress, if it were caused, might result in illness or bodily harm.

This deficiency in the plaintiff's complaint provides an additional, independent ground for striking the negligent infliction claim.  See Morris v. Hartford Courant Company, 200 Conn. 676, 684 (1986) ("The plaintiff did not allege that the emotional distress caused by the defendant's conduct exposed him to the risk of illness or bodily harm.  Therefore, the trial court was correct in striking the second count of the complaint for failure to state a claim upon which relief could have been granted.").  See also Subiono v. Yordan, No. 559573, 2002 WL 1008490, at *4 (Conn. Super. Ct. April 26, 2002) (Martin, J.) ("To sustain a cause

35

of action for negligent infliction of emotional distress, the plaintiff must allege that the

defendant should have realized that its conduct involved an unreasonable risk of causing

emotional distress and that distress, if it were caused, might result in illness or bodily harm.")

(internal quotation marks omitted); Doe v. New Haven Board of Education, No. 443427,

2001 WL 1231835, at *5 (Conn. Super. Ct. Sept. 25, 2001) (Jones, J.) (granting motion to

strike negligent infliction of emotional distress claim on the ground that the plaintiff failed to

plead that "the defendant should have anticipated that its conduct involved an unreasonable

risk of causing emotional distress that might result in illness or bodily harm"); Knight v.

Southeastern Counsel on Alcoholism and Drug Dependency, No. 557182, 2001 WL

1231825, at *5 (Conn. Super. Ct. Sept. 24, 2001) (Hurley, J.) ("The plaintiff does not allege

that the emotional distress caused by the defendant's conduct exposed her to the risk of

illness or bodily harm. . . . Therefore, the motion to strike the Sixth Count on the ground that

the plaintiff has failed to sufficiently allege a cause of action for negligent infliction of

emotional distress is granted"); Seipold v. Greenberg, No. CV000437447, 2001 WL 988019,

at *3 (Conn. Super. Ct. Aug. 3, 2001) (Devlin, J.) ("In the Sixth Count the plaintiff alleges

negligent infliction of emotional distress.  To establish this cause of action, the plaintiff must

plead and prove that the defendant should had realized that its conduct involved an

unreasonable risk of causing emotional distress and that distress, if it were caused, might

result in illness or bodily harm.  The defendants correctly point out that the Sixth Count fails

to contain this allegation.  On this ground, the motion to strike must be granted"); Khouri v.

Koloniaris, No. CV 330880, 1997 WL 80676, at *7 (Conn. Super. Ct. Feb. 10, 1997)

(Melville, J.) (the plaintiff "has failed to allege that the defendant should have realized that his conduct involved an unreasonable risk of causing emotional distress to the plaintiff and that the distress, if it were caused, might result in illness or bodily harm to the plaintiff. Absent this essential element of his cause of action the defendant's motion to strike should be and is hereby granted").

The plaintiff's negligent infliction of emotional distress claim merely alleges that the defendants "negligently inflicted emotional distress upon the plaintiff in the termination process." (Complaint, ¶ 72.)  The complaint contains no allegation that the defendants should have realized that their conduct created an unreasonable risk of causing emotional distress which might result in illness or bodily harm.  Therefore, the plaintiff's sixth cause of action should be dismissed.

### III.   **CONCLUSION**

For the reasons stated, the plaintiff's third, fourth, fifth and sixth causes of action should be dismissed for lack of subject matter jurisdiction.  Should the Court choose to exercise its supplemental jurisdiction over those claims, the plaintiff's fifth and sixth causes of action should be dismissed for failure to state a claim upon which relief can be granted.

THE DEFENDANTS
YALE UNIVERSITY HEALTH
SERVICES, ALAN GREENGLASS,
PAUL GENECIN, MORESON KAPLAN,   and
KATHERINE MATZKIN,


By _____

Patrick M. Noonan (ct00189)
Donahue, Durham & Noonan, P.C.
741 Boston Post Road
Guilford, CT 06437
203-458-9168




**<u>CERTIFICATION</u>**

This is to certify that a copy of the foregoing was mailed, postage prepaid, on the

above-written date, to:

Judith A. Ravel, Esquire
246 Goose Lane, Suite 246
Guilford, CT 06437


_____

Patrick M. Noonan