# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT
## AT BRIDGEPORT

JON M. FESSEL, M.D.                        CIVIL NO. 3:05-CV-01348-(SRU)

      **Plaintiff**

v.

**YALE UNIVERSITY HEALTH SERVICES,
ALAN GREENGLASS, PAUL GENECIN,
MORESON KAPLAN, RAVI DURVASULA,
KATHERINE MATZKIN**                        **JANUARY 24, 2006**

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
## OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

The plaintiff hereby submits this Memorandum of Law in support of his

Opposition to Defendants' Motion to Dismiss the third, fourth, fifth and sixth counts of

plaintiff's Complaint.

## I.        PRELIMINARY STATEMENT

Defendants' effort to split this action into two separate proceedings should be

denied.  The court has jurisdiction not only over the plaintiff's federal age and disability

discrimination claims, but also over all state law claims "that are so related to [plaintiff's

federal claims] that they form part of the same case or controversy under Article III of

the United States Constitution."  28 U.S.C. § 1367.  All of the claims plaintiff has

asserted relate directly to defendants' decision to terminate plaintiff's employment

because of his age and disability.  In carrying out that decision, the defendants not only

violated the federal and state statutes prohibiting discrimination on the basis of age or

disability, but also breached contractual obligations and intentionally, or at least negligently, inflicted severe emotional distress on plaintiff. The claims defendants seek to force into a separate proceeding thus arise from the same "nucleus of operational fact" as plaintiff's federal claims and fall squarely within this Court's supplemental jurisdiction.

Defendants' alternative application to dismiss plaintiff's claims for negligent and intentional infliction of emotional distress as insufficiently pled should be denied as well. Plaintiff has more than amply detailed his claims, including defendants' withholding of needed medical care and attempt to terminate him despite their knowledge that he was suffering from severe depression and needed an accommodation.

## II.    STATEMENT OF FACTS

### A.    Procedural History

By his Complaint filed on August 24, 2005, plaintiff brought this action asserting claims against his former employer, Yale University Health Services ("YUHS") for age and disability discrimination, breach of employment contract and breach of the covenant of good faith and fair dealing. (Complaint ¶ 4, 5.)  The Complaint also asserts claims for intentional and negligent infliction of emotional distress against YUHS and individual defendants Paul Genecin, M.D., Ravi Durvasula, M.D., Alan Greenglass, M.D., and Moreson Kaplan, M.D., who are, respectively, the Director, Medical Director, Chief of Internal Medicine and Associate Director for Clinical Affairs at YUHS, as well as Katherine Matzkin, who is an employee of Yale University's Human Resources

Department. (Complaint ¶ 6.)  As discussed more fully below, the Complaint sets forth in detail the facts concerning defendants' decision to terminate plaintiff (or force him to resign) because of his age and disability and defendants' actions in furtherance of that decision, including breach of contractual obligations owed to plaintiff and tortious infliction of emotional distress on plaintiff. (See Complaint ¶¶ 10-55.)

On December 13, 2005, the defendants filed a motion, pursuant to Fed.R.Civ.P. 12(b)(1), to dismiss plaintiff's state law claims on grounds that they do not rise out of facts common to the federal discrimination claims and therefore the court's exercise of supplemental jurisdiction is inappropriate.  In the alternative, the defendants move, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss the claims for intentional and negligent infliction of emotional distress for failure to state a claim upon which relief could be granted.

On December 15, 2005, plaintiff filed a Motion for Extension of Time through and including January 24, 2006 to file an opposition to the defendants' Motion to Strike. By order dated December 22, 2005, the court granted plaintiff's motion.

B. **Plaintiff's Disabilities**

In November 1999, plaintiff (then sixty-three year old) suffered a serious cardiac arrest, as a result of which he was deprived of oxygen for a significant period.  In addition to the cardiac arrest itself, plaintiff subsequently suffered temporary cognitive impairment and serious depression, conditions that frequently follow a cardiac arrest and

which, in plaintiff's case, were almost certainly the result of his cardiac arrest.  In October 2000, on the advice of plaintiff's primary YUHS physician, Robert Henry, M.D. (who has since left YUHS), plaintiff advised YUHS that he would no longer be able to work nights or weekends.  In response, YUHS significantly reduced plaintiff's salary; plaintiff protested the decrease in salary, to no avail.

YUHS, as plaintiff's health care provider, was responsible for providing care relating to his cardiac arrest and any conditions arising out of that event. YUHS utterly breached that responsibility.  Indeed, after Dr. Henry left YUHS in November 2000, YUHS failed to designate any physician to be responsible for plaintiff's care for more than 1 ½ years.  Moreover, in gross violation of its duties, YUHS never administered a single neurological or psychiatric test to evaluate plaintiff's mental condition, notwithstanding that it is well known in the medical community that psychiatric disorders, including cognitive impairment and major depression, frequently occur in the aftermath of a cardiac arrest.

By 2002, plaintiff was suffering from major depression, which became increasingly more severe as 2002 progressed, and that condition was, or at the very least, should have been known to defendants.  During the second week of January 2003, plaintiff sought treatment for his depression from a YUHS psychiatrist, Howard Blue, M.D.  On January 9, 2003, plaintiff asked Dr. Blue's administrative assistant to schedule an appointment for him.  Plaintiff made clear that he was seeking treatment for himself.

Page 4 of  30

Dr. Blue left a message for plaintiff later that day saying he would communicate with him the following day.  Dr. Blue, however, did not do so.  Dr. Blue's failure to follow-up with plaintiff was yet another violation of medical standards and a knowing failure to accommodate the plaintiff with his disability.  It is well understood by mental heath care professionals that people suffering from depression or other psychiatric disorders are often reluctant or unable to seek care; indeed, they may not even understand that they are impaired and need treatment.  Accordingly, not only prompt follow-up but repeated follow-up may be necessary to ensure that patients receive proper care.

### C.    Defendants Sought to Terminate Plaintiff

In January 2002, YUHS hired Tariq Malik, M.D., age sixty-four, to be Chief of Internal Medicine.  Almost immediately after Dr. Malik assumed his position, defendant Durvasula, who as Medical Director was Dr. Malik's superior, repeatedly demanded that Dr. Malik begin "easing [plaintiff] out."  When Dr. Malik asked Dr. Durvasula the reason for these demands, Dr. Durvasula could provide none, and Dr. Malik accordingly refused Dr. Durvasula's demands.  In early April 2002, approximately three months after YUHS had hired Dr. Malik, YUHS summarily fired him.

In June 2002, Dr. Greenglass, who had been with YUHS for only a brief period and had little, if any, opportunity to assess plaintiff's work, gave him a written performance evaluation which gave several unsupportable "Below Average" ratings,

including for the quality of patient care, which were blatantly unfounded.  These ratings were directly contrary to a letter plaintiff had received less than a month earlier from the Deputy Director of YUHS, which: (a) stated that plaintiff had received nominations from his peers and colleagues as YUHS Physician of the Year, (b) "recognize[d] ... the service, team work and patient focus [plaintiff had] demonstrate[d] in [his] work," and (c) commended plaintiff for his "dedication to high quality, patient focused service."  Indeed, even Dr. Greenglass, who gave plaintiff the evaluation, sought to distance himself from it, telling plaintiff that the rating for patient care was "based on hearsay."

### D.  Defendants Demand that Plaintiff Resign

On January 16, 2003, because of his major depression, plaintiff advised YUHS that he could not come to work. That same day, plaintiff sought treatment from Dr. Paul Kirwin, a psychiatrist not affiliated with YUHS.

During the week of January 20, 2003, plaintiff had at least two telephone conversations with defendant Greenglass during which he told Dr. Greenglass that Dr. Kirwin was treating him for depression and that Dr. Kirwin had prescribed a medication, Mirtazapine, for him.  Mirtazapine is frequently prescribed for major depression, as Dr. Greenglass knew or, as a physician, should have known.

Within a few days, Dr. Greenglass called plaintiff at home and directed him to come to work the following Monday, January 27, 2003.  Dr. Greenglass told plaintiff

that, in view of his condition, rather than see scheduled patients, plaintiff should catch up on paperwork in the morning, meet with Dr. Greenglass and Dr. Durvasula at noon, and then work in YUHS's Urgent Visit Center in the afternoon.  The Urgent Visit Center is for patients without appointments who need non-emergency care promptly.

As Dr. Greenglass requested, plaintiff went to work on January 27, 2003.  At around noon on January 27, 2003, Dr. Greenglass asked plaintiff to meet him in YUHS's Administrative Suite.  Finding it odd that Dr. Greenglass had not scheduled the meeting to take place in his own office, plaintiff asked Dr. Greenglass who else would be present. Dr. Greenglass said that Dr. Durvasula would join him.  In fact, when plaintiff arrived at the Administrative Suite, he found not only Dr. Greenglass and Dr. Durvasula present, but also defendant Matzkin from Human Resources.

At the meeting, defendant Greenglass questioned plaintiff about prescriptions that he had written for two patients, Maria Mendizabal and John Bell.  Plaintiff was shown copies of prescriptions for Ms. Mendizabal and Mr. Bell and asked whether he had written them.  Plaintiff readily acknowledged that he had written them.  Ms. Mendizabal was plaintiff's medical assistant.  He had written a number of prescriptions for Ms. Mendizabal for medication for migraine headaches, a condition for which others at YUHS had long treated Ms. Mendizabal.  Similarly, plaintiff prescribed medication for Mr. Bell's back condition, for which others at YUHS had treated Mr. Bell.

After questioning plaintiff, Dr. Greenglass, Dr. Durvasula and Ms. Matzkin left the room, asking him to remain.  When they returned, Ms. Matzkin told plaintiff that he would be fired unless he agreed to resign or retire.  Ms. Matzkin asserted that the prescriptions written for Ms. Mendizabal and Mr. Bell had put those individuals "at risk of motor vehicle accident or overdose."  Ms. Matzkin further threatened that if he did not resign or retire, the plaintiff and his wife would be deprived of lifetime health insurance benefits.

At no time during the meeting did Dr. Greenglass, who knew full well that plaintiff was suffering from a major disability (depression), or Dr. Durvasula, who knew or should have known of his disability, or Ms. Matzkin, a trained Human Resources professional, who also knew or should have known of his disability, inquire whether plaintiff was in need of an accommodation or medical care for his disability.  Moreover, defendants knew that Ms. Mendizabal had also asked another YUHS physician to prescribe medication for her migraine headaches and that he had done so.  That physician, who is substantially younger than the plaintiff, was never threatened with termination, nor was he disciplined.  According to the YUHS website, Ms. Mendizabal also remains employed at YUHS.

Plaintiff retained counsel, who on February 4, 2003, informed YUHS that plaintiff would not resign or retire.  In a letter to the plaintiff dated February 24, 2003, defendant Matzkin indicated that YUHS had reconsidered its decision to terminate him

and instead issued a "final warning" and provided plaintiff with a memorandum purporting to give a "final warning."  Throughout his tenure at YUHS, plaintiff had never previously received any type of disciplinary warning.

### E.   **Defendants Terminate Plaintiff**

While on his disability leave, defendants continued to discriminate against plaintiff due to his age and disability, retaliated against him for asserting his legal rights, breached contractual obligations owed to plaintiff and continued to inflict emotional distress on plaintiff.

On April 1, 2003, plaintiff, through counsel, attempted to initiate an internal YUHS grievance process, which has yet to proceed.  Plaintiff maintained that the "final warning" simply reiterated the pretextual assertions the defendants had made to plaintiff on January 27, 2003 and was inaccurate in other respects as well.

In accordance with its contractual obligations set forth in an employment contract dated September 5, 1985, between plaintiff and defendant YUHS, YUHS reappointed plaintiff as a physician every two years.  According to the contract, YUHS was obligated to continue reappointing plaintiff to his position unless it could demonstrate cause to end his employment.

Plaintiff was due to be reappointed to his position at YUHS as of July 1, 2003. Accordingly, in late June 2003, he spoke with Nancy Creel, a Human Resources

representative, concerning his reappointment, requesting that she advise him when it would take place.  Having heard nothing in response, plaintiff wrote to defendant Durvasula on October 7, 2003 inquiring about his reappointment.  (YUHS is contractually obligated to renew plaintiff's license at its expense.)  By letter dated October 21, 2003, Dr. Durvasula responded that, pursuant to an asserted YUHS practice, YUHS "took no action" with respect to his re-appointment because he was on disability leave.  Plaintiff discovered that YUHS removed his name from its website list of YUHS physicians prior to the conclusion of his disability leave and posted openings for positions for which he would be more than qualified, which had not been filled when the plaintiff was available to return to full time employment.

Despite the plaintiff's request to return to work in April 2004 upon his doctor's recommendation, and his availability to return without additional accommodations for his disability, defendant YUHS has continued its discriminatory treatment and refused to allow plaintiff to return to his former position even though it has posted positions for which the plaintiff would be more than qualified, in breach of its contractual and legal obligation to do so.

The defendant knowingly materially breached the employment contract which it drafted and entered into with the plaintiff on September 5, 1985, in that it failed to reappoint the plaintiff per the terms of the contract as it was required to do and instead attempted to terminate the plaintiff without cause.  In so doing, the defendants attacked

the medical competency of plaintiff.  The defendants have intentionally and negligently

inflicted emotional distress upon the plaintiff by their outrageous conduct, thereby

causing plaintiff to suffering irreparable injury and monetary damages.

**III.**     **ARGUMENT**

      **A.**     **Legal Standard**

On a motion to dismiss for lack of subject matter jurisdiction pursuant to

Fed.R.Civ.P. 12(b)(1), "a court must accept all factual allegations in the complaint as true

and draw all inferences from those allegations in plaintiff's favor."  <u>Sullivan v. Metro-</u>

<u>North Railroad Co.</u>, 179 F.Supp.2d 2, 4 (D.Conn. 2002) (<u>citing Jaghory v. New York</u>

<u>State Dept. of Educ.</u>, 131 F.3d 326, 329 (2d Cir. 1997)).  The Eleventh Circuit Court of

Appeals has observed that "[i]t is extremely difficult to dismiss an action for lacking in

subject matter jurisdiction."  <u>Garcia v. Copenhaver, Bell & Assoc.</u>, 104 F.3d 1256, 1260-

60 (11th Cir. 1997) (citation omitted).  On a motion to dismiss for lack of subject matter

jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), "a court must accept all factual allegations

in the complaint as true and draw all inferences from those allegations in plaintiff's

favor."  <u>Sullivan v. Metro-North Railroad Co.</u>, 179 F.Supp.2d 2, 4 (D.Conn. 2002) (<u>citing</u>

<u>Jaghory v. New York State Dept. of Educ.</u>, 131 F.3d 326, 329 (2d Cir. 1997)).  The court

may dismiss a complaint only where "it appears beyond doubt, even when the complaint

is liberally construed, that the plaintiff can prove no set of facts which would entitle him

to relief."  Id. (citation omitted; internal quotations omitted.)  Where the existence of

subject matter jurisdiction turns on a factual issue, the court may look beyond the

complaint and consider evidence outside the pleadings.  Id.

When deciding a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), "the Court

must accept all well-pleaded allegations as true and draw all inferences in favor of the

pleader."  Alfano v. Bridgeport Airport Services, Inc., 373 F.Supp.2d 1, 3 (D.Conn. 2005)

(quotations omitted).  "A complaint should not be dismissed for failure to state a claim

unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his

claim which would entitle him to relief."  Id. (quotations omitted).  " 'The issue is not

whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer

evidence to support the claims.  Indeed, **it may appear on the face of the pleadings that**

**a recovery is very remote and unlikely but that is not the test**.' "  Id. (quoting Scheuer

v. Rhodes, 416 U.S. 232 (1974)) (emphasis added).

A Rule 12(b)(6) motion to dismiss  tests the formal sufficiency of the statement of

claim for relief.   Fednav Ltd. v. Sterling Int'l, 572 F.Supp. 1268, 1270 (N.D.Calif. 1983).

"The Court's inquiry is whether the allegations state a sufficient claim under

Fed.R.Civ.P. 8(a)."  Id. (quotations omitted).  "Rule 8(a) sets forth the requirements for

pleading a claim and calls for 'a short and plain statement of the claim showing that the

pleader is entitled to relief.' "  Id. (quoting Fed.R.Civ.P. 8(a). "The complaint is to be

liberally construed in favor of the plaintiff, and its material allegations are to be taken as

true." <u>Id</u>.  "Only when the pleading fails to meet this liberal standard should it be

dismissed under Rule 12(b)(6)."  <u>Id</u>. (citation omitted).  "Dismissal under rule 12(b)(6) is

a 'harsh remedy which must be cautiously studied, not only to effectuate the spirit of the

liberal rules of pleading but also to protect the interests of justice."  <u>Morse v. Regents of</u>

<u>the University of Colo.</u>, 154 F.3d 1124, 1127 (10th Cir. 1998) (citation omitted; internal

quotations omitted).

> **B.      This Court Should Exercise Supplemental Jurisdiction Over**
> **Plaintiff's State Law Claims**

Plaintiff's federal age and disability discrimination claims provide the basis for

the District Court's jurisdiction over the present action.  Plaintiff's additional state law

claims for breach of contract, breach of the covenant of good faith and fair dealing and

infliction of emotional distress are so related to the federal claims as to form part of the

same case or controversy and therefore fall within the district court's exercise of pendant

jurisdiction.

In 1990, Congress codified the doctrine of supplemental jurisdiction, which

allows federal courts to entertain claims over which they have no independent basis for

jurisdiction, in 28 U.S.C. §1367(a).  <u>Sullivan v. Metro-North Railroad Co.</u>, 179

F.Supp.2d at 5.  Section 1367 provides in relevant part:

> in any civil action of which the district courts have original jurisdiction,
> **the district courts shall have supplemental jurisdiction over all other**
> **claims that are so related to claims in the action within which such**
> **original jurisdiction that they form part of the same case or**

**controversy** under Article III of the United States Constsitution.  Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties....

28 U.S.C. §1367(a) (emphasis added).

Thus, the district courts have "the power to exercise supplemental jurisdiction over a state law claim where the state and federal claim derive from a common nucleus of operative fact and commonly will exercise it if considerations of judicial economy, convenience and fairness to litigants weigh in favor of hearing the claims at the same time." Sirota v. Welbilt Appliance, Inc., 840 F.Supp. 11, 14 (E.D.NY 1994) (internal quotations omitted; citations omitted).  Clearly, these factors weigh in favor of the district court's exercise of supplemental jurisdiction over plaintiff's state law claims in this case. The state law claims for breach of employment contract, breach of the covenant of good faith and fair dealing and infliction of emotional distress arise from exactly the same facts and similar occurrences as the federal age and disability claims, namely the defendants' attempt to terminate the plaintiff on a pretext, their failure to reappoint him despite a contractual obligation to do so, and the manner in which they treated the plaintiff during a protracted termination process in light of his known disability. Moreover, in light of the fact that the state and federal claims involve the same witnesses (i.e., individual defendants Paul Genecin, M.D., Ravi Durvasula, M.D., Alan Greenglass, M.D., Moreson Kaplan, M.D. and Katherine Matzkin), the interests of judicial economy, convenience and fairness to litigants are served by keeping these claims together in

federal court.  "Duplicative litigation at multiple levels of government involving the same facts are contrary to the objectives of the Supplemental Jurisdiction Act and the public interest." Chambers v. Capital Cities/ABC, 851 F.Supp. 543, 545 (S.D.NY 1994).

       The district courts have found it appropriate in numerous cases to exercise supplemental jurisdiction over state law claims.  See e.g., Carroll v. General Datacomm Industries, Inc., 680 F.Supp.71, 72-73 (D.Conn. 1987) (finding that judicial economy, convenience and fairness to the litigants would be better served by trying a federal ADEA claim with a state claim for breach of contract); Shane v. State of Connecticut, 821 F.Supp. 829 (D.Conn. 1993) (exercising supplemental jurisdiction over various state claims, including breach of contract, where the state law claims are based on the identical facts as the federal claims and allege unlawful termination, do not raise novel or complex issues of state law, and do not expand the scope of issues nor predominate over the federal claims); LaBlanc v. Stamford, 51 FEP Cases 1221, 1988 WL 148431 (D.Conn.) (finding that convenience and judicial economy are served by exercising supplemental jurisdiction over state emotional distress claim along with federal age discrimination claim); Banks v. Chicago Bd. Of Educ., 895 F.Supp. 206, 208 (N.D.Ill. 1995) (exercising supplemental jurisdiction over state wrongful termination claim along with federal civil rights claim where the state claim alleges by reference the identical factual situation as alleged in the federal claim).

       Defendants cite a laundry list of inapposite cases that are factually distinguishable

from the present case in an effort to persuade the court that plaintiff's federal and state

claims do not arise from the same facts.  (Def.'s Mem. Supp. Dismiss at 7-9).  See e.g.,

Cormier v. Funtown/Splashtown USA, Inc., 294 F.Supp. 2d 125, 128-30 (D.Me. 2003)

(where employee brought Title VII claim against employer and its majority shareholder

based upon alleged sexual harassment, the court dismissed plaintiff's state law claims for

breach of fiduciary duty, intentional misrepresentation, breach of contract and violation

of state employment security law on grounds that such claims would "rely significantly

on facts not involved in determination of the discrimination claim" and might involve

different witnesses.)  In this case the federal and state claims all arise from the same

nucleus of operative facts concerning defendants' trumped up excuse for terminating

plaintiff, their failure to reappoint plaintiff despite a contractual obligation to do so and

the manner in which defendants treated the plaintiff during a protracted termination

process in light of his known disability.  Moreover, the witnesses will be virtually

identical for both the federal and state claims.

      Defendants cite several cases to support their contention that the District Court of

Connecticut has declined to exercise supplemental jurisdiction over state law claims

similar to those brought by the plaintiff in this case.  (Def.'s Mem. Supp. Dismiss at 8.)

A closer look at these cases, however, reveals that they are distinguishable from the

present case and do not support the wholesale dismissal of plaintiff's state law claims.  In

Koehler v. Chesebrough-Ponds, Inc., 705 F.Supp. 721 (D.Conn. 1998), the court

dismissed state law claims for breach of implied contract and breach of the covenant of good faith and fair dealing, promissory estoppel and detrimental reliance, intentional infliction of emotional distress and abusive discharge.  Id. at 725.  The court found that the plaintiff's state law claims would require substantially more proof than the federal discrimination claim.  Id. at 723.  The plaintiff's breach of implied contract and breach of the covenant of good faith and fair dealing claims would require evidence of representations made by the defendant's agents concerning the plaintiff's continued employment and proof of the employment policies and personnel manual upon which the plaintiff relied.  Id.  The abusive discharge claim would require proof of the underlying tax fraud charge against the plaintiff.  Id.  In addition to these factors, the court cited the unsettled nature of the law in Connecticut regarding whether statements made in an employer's personnel manual give rise to a contract.  Id. at 724.  In this case, however, the plaintiff had a written employment contract with defendant YUHS and his state law claims arise from the same facts, during the same period of time as the federal discrimination claims.  Therefor, Koehler v. Chesebrough-Ponds is not applicable.

Defendants also cite Brokke v. Stauffer Chemical Co., 703 F.Supp. 215 (D.Conn. 1988), an action brought by a former employee against companies which had acquired an interest in his employer, alleging claims pursuant to ADEA and ERISA along with numerous state law claims.  Id. at 217.  The court observed that the question of whether to exercise supplemental jurisdiction was a close one.  Id. at 218.  Dismissing the state law

claims, the court emphasized that, given their sheer number (seven), they would substantially predominate the federal claims.  Id.  The court also observed the state law claims related to a more lengthy period of time of plaintiff's employment than the federal claims.  Id.  These are not concerns in the present case where the plaintiff asserts only four state law claims, covering the same brief scope of time and involving the same facts as the federal claims.

The defendants cite Glasser v. Group W Satellite Communications, No. B-89-664, 1990 WL 128563 (D.Conn. July 11, 1990), wherein the court dismissed the plaintiff's breach of contract claim on grounds that it would involve inquiry into facts not involved in the federal ADEA action.  In the present case, however, the plaintiff has alleged his contract was breached and defendant YUHS violated its duty of good faith and fair dealing by seeking to terminate him as part of a plan to rid itself of older doctors using as a pretext an alleged mistake in writing prescriptions.  In cases such as this, district courts exercise supplemental jurisdiction over state law breach of contract claims brought with ADEA claims.  See e.g., Rechsteiner v. Madison Fund, Inc., 75 F.R.D. 499, 506 (D.Del. 1977) (exercising supplemental jurisdiction over the plaintiff's state law claims for breach of contract on grounds that the plaintiff alleged a sufficient factual basis to infer the requisite common nucleus of facts with federal ADEA claim.)

Defendants cite Burgess v. Omar, 345 F.Supp.2d 369 (S.D.N.Y. 2004), another readily distinguishable case.  Burgess v. Omar was a federal securities law action in

which the transferee of business filed numerous counterclaims based on state laws.  <u>Id</u>. at

370.  The court dismissed the third counterclaim concerning the plaintiff's alleged actions

in forcing the defendant out of a different company after completion of the fraud alleged

in the complaint, on grounds that it did not arise out of a common nucleus of facts to the

complaint.  <u>Id</u>. at 371.  The court dismissed the other two counterclaims involving the

alleged looting of the corporate defendants over a six year period.  <u>Id</u>. at 371-72.  The

court found that these claims did not share a common nucleus of fact with the complaint,

which concerned a relatively short period of time.  <u>Id</u>. at 372.   The court added that the

counterclaims, requiring an extensive overview of looting of the business over a six year

period, would substantially predominate over the federal claims and therefore would fall

under the exceptions to supplemental jurisdiction set forth in 28 U.S.C.A. § 1367(c)(2).

<u>Id</u>.  Unlike in <u>Burgess v. Omar</u>, in the present case the plaintiff's state law claims arise

out of the same nucleus of facts as the discrimination claims and cover only the same

brief period of time surrounding the termination of his employment.  Nor would the state

law claims predominate over the federal claims in this case, as they would only

minimally expand the scope of the case.

     <u>Spencer v. Banco Real, S,A</u>., 623 F.Supp. 1008 (D.C.N.Y. 1985), is yet another

case cited by the defendants that is readily distinguishable from this case.  (Def.'s Mem.

Supp. Dismiss at 8.)  In <u>Spencer v. Banco Real, S,A</u>., the plaintiff employee had filed

charges with the New York Division on Human Rights and the EEOC, alleging

discrimination against her employer bank.  Id. at 1010.  The bank later discharged her,

allegedly for unauthorized taking of documents.  Id.  The bank then commenced a

replevin action against the plaintiff, asserting state law claims for conversion, trespass,

unfair competition, tortious interference with business and contractual relationships and

breach of fiduciary duty.  Id.  In turn, the plaintiff asserted  counterclaims based on state

laws, claiming intentional infliction of physical and emotional distress, defamation and

abuse of process.  Id.  The plaintiff then filed two additional charges with the EEOC,

claiming that her discharge and the replevin action were in retaliation for exercising her

rights under the Constitution and Title VII.  Id.  The court, sua sponte, considered

whether it had subject matter over the state law claims raised by both parties.  Id. at 1011.

After concluding that it lacked jurisdiction over the defendant bank's counterclaims, the

court dismissed the plaintiff's counterclaims on grounds that  the claims did not derive

from a common nucleus of facts as the underlying Title VII claim.  Id. at 1012.  The court

noted further that it would be pointless to resolve the plaintiff's state law claims since

they were asserted initially in response to the employer's claims, which had been

dismissed.  Id. at 1013.  The facts and legal claims of the present case couldn't be more

different.

   Defendants point to potential juror confusion as additional grounds for dismissing

the state law claims and cite cases to support their position.  (Def.'s Mem. Supp. Dismiss

at 9.)  These cases are inapposite and do not support dismissing plaintiff's state law

claims in this case on grounds of juror confusion.  See Snyder v. J.M. Ney Co., 51 FEP

Cases 1307, 1987 WL 14970 (D.Conn.) (dismissing plaintiff's breach of implied contract

claim in ERISA and ADEA action on grounds that: to the extent that the state claim

differed from the federal claims, its inclusion would complicate the action and increase

the likelihood of jury confusion; and the unsettled nature of implied contracts in

Connecticut outweighed other factors favoring the exercise of supplemental jurisdiction);

Koehler v. Chesebrough-Ponds, Inc., supra 705 F.Supp. at 723-24 (dismissing plaintiff's

numerous state law claims brought with ADEA claim on grounds of juror confusion due

to several factors, including: the expanded scope of proof to establish the existence of an

implied contracted and the relevant tax fraud charge against the plaintiff; and the

unsettled nature of Connecticut law regarding creation of a contract based on an

employer's personnel.)  In this case, where the plaintiff had a written employment

contract with defendant YUHS and asserts only four state law claims arising out of the

same facts as the federal discrimination claims, the potential for jury confusion from the

state claims does not weigh sufficiently against the court's exercise of supplemental

jurisdiction.  See Sirota v. Welbilt Appliance, Inc., 840 F.Supp. 11, 14 (E.D.NY 1994)

(finding that state Human Rights Law claim and ADEA claim arise out of the same facts,

the court exercised supplemental jurisdiction, noting that "[t]he possibility of jury

confusion and prejudice do not justify the duplication and waste which would result from

separate proceedings.")

Defendants cite numerous cases in this and other jurisdictions wherein the district courts have declined to exercise supplemental jurisdiction over state law claims.  (Def.'s Mem. Supp. Dismiss at 11-12.)  However, the determination of whether to exercise supplemental jurisdiction over state law claims is entirely fact-specific and defendants have not cited cases that correspond to the unique facts of this case.  For example, in Singh v. The George Washington Univ., 363 F.Supp.2d 58 (D.D.C. 2005), the court dismissed a former defendant's counterclaim for defamation, finding that the claim that the plaintiff harmed the former defendant by allegedly publishing defamatory statements had almost no factual or legal overlap with the plaintiff's discrimination claim concerning the school's failure to provide accommodations.  Id. at 72.  The court also noted that the counterclaim for defamation was rendered moot by the former defendant's dismissal from the action.  Id. at 73.   See also, Douglas v. American Cyanamid Co., 472 F.Supp. 298, 306 (D.Conn. 1979) (in ADEA action, court declined to exercise pendent jurisdiction over state claim for defamation which would focus on **post-termination** events); Ramos v. U.S. Dept. of Housing and Urban Dev't, No. 96CIV.5552(MGC), 1997 WL 589008 (S.D.N.Y. Sept. 19, 1997) (breach of contract claim does not share common nucleus of fact with Federal Housing claim, as they involve "entirely separate questions"); Semi-Tech Litigation, LLC v. Bankers Trust Co., 234 F.Supp.2d 297, 300 (S.D.N.Y. 2002) (dismissing state law claims against defendants where they do not arise from common nucleus of fact as "the extremely narrow" Trust Indenture Act); Leanard v. Inhabitants of

Town of Van Buren, 182 F.Supp.2d 115, 127 (D.Me. 2002) (plaintiff's numerous state

law claims for civil rights violations, civil conspiracy, defamation, intentional infliction

of emotional distress and invasion of privacy rely on facts not relevant to federal due

process claim).

      The foregoing cases cited by the defendants lend bulk not weight to their

Memorandum in Support of Motion to Dismiss, bearing little resemblance to this case in

which plaintiff's state law claims are intrinsically and uniquely related to his federal

discrimination claims and do not significantly expand the scope of evidence required to

prove the discrimination claims.  See Sullivan v. Metro-North Railroad, 179 F.Supp.2d 2,

6 (D.Conn. 2002) (exercising supplemental jurisdiction even where the liability standards

of the various state law claims differ and may require the plaintiff to establish some

additional facts not related to the federal claim, where the core factual allegations are

identical for all claims such that the plaintiff "would ordinarily be expected to try them all

in one judicial proceeding.")

      Defendants' assertion that it would be unfair to the litigants if  this court were to

exercise supplemental jurisdiction over plaintiff's state law claims is without merit.

(Def.'s Mem. Supp. Dismiss at 11.)  The individual defendants named in this case will be

involved in the discovery process and as trial witnesses on all claims whether they are

brought in federal court alone or in two separate proceedings in federal and state court.

Therefore, it would serve the interests of fairness to the litigants, as well as judicial

economy, to exercise pendant jurisdiction over the state law claims.

Pursuant to 28 U.S.C. § 1367,  this Court's exercise of supplemental jurisdiction over plaintiff's state law claims is appropriate because these claims are so related to plaintiff's federal claims that they form part of the same case or controversy and because it would serve the interests of judicial economy and fairness to the litigants to try all such related claims together.

C.      **Counts Five and Six State a Claim**

1.      Intentional Infliction of Emotional Distress

The defendants' argument that plaintiff has failed to allege facts sufficient to support his claims for intentional infliction of emotional distress ignores Fed.R.Civ.P. Rule 8(a)(2)'s liberal system of "notice pleading."  The numerous state court cases cited by the defendants are therefore inapposite.  (Def.'s Mem. Supp. Dismiss at 16-19.)

Defendants additionally cite several federal cases in which the courts determined that the plaintiff had not alleged or proved conduct to meet the standard required to succeed on a claim for intentional infliction of emotional distress.  (Def.'s Mem. Supp. Dismiss at 20-21.)  These cases are distinguishable from the present case.  Most of these cases are distinguishable in that the court's decision to dismiss the plaintiff's intentional infliction of emotional distress claim was made pursuant to a summary judgment motion **after** discovery on the issues.  See e.g., Reed v. Signode Corp., 652 F.Supp.129, 137 (D.Conn. 1985); Collins v. Gulf Oil Corp., 605 F.Supp. 1519, 1522-23 (D.Conn. 1985); Thomas v. St. Francis Hospital and Medical Center, 990 F.Supp. 81, 91 (D.Conn. 1998); Downing v. West Haven Bd. Of Educ., 162 F.Supp.2d 19, 33-34 (D.Conn. 2001).  The remaining cases cited by the defendants are factually distinguishable from the present case.  See e.g., Ericson v. City of Meriden, 113 F.Supp.2d 276, 292 (D.Conn. 2000) (dismissing plaintiff's claim for intentional infliction of emotional distress based on her allegations surrounding the viewing of a sexual videotape during the workday by her co-

Page 25 of  30

workers and her transfer to another position, finding that such conduct did not rise to the

level of "extreme and outrageous conduct"); Miner v. Town of Cheshire, 126 F.Supp.2d

184, 195 (D.Conn. 2000) (dismissing plaintiff's claim for intentional infliction of

emotional distress based on employer's alleged failure to protect plaintiff from sexual

harassment and alleged retaliatory discharge where there was no factual allegation that

the employer conducted itself in a humiliating extreme or outrageous manner toward the

plaintiff ); Williams v. Perry, 960 F.Supp. 534, 536, 541 (D.Conn. 1996) (dismissing

plaintiff police officer's claim for intentional infliction of emotional distress during

ongoing employment, finding that her allegations that defendant lieutenant made racially

derogatory remarks were not sufficient to support her claim).

In Alfano v. Bridgeport, 373 F.Supp.2d 1 (D.Conn. 205), the court observed that

Fed.R.Civ.P. 8(a)(2)'s requirement that a complaint include "only a short and plain

statement of the claim showing that the pleader is entitled to relief" is satisfied where the

complaint gives the defendant fair notice of what the plaintiff claim is and the grounds

upon which it rests." Id. at 4 (internal quotations omitted; citations omitted).  "This

simplified notice pleading standard relies on liberal discovery rules and summary

judgment motions to define disputed facts and issues to dispose of unmeritorious claims."

Id.  (internal quotations omitted; citations omitted).  Accordingly, the court denied the

defendants' motion to dismiss the plaintiff's claim under the Rehabilitation Act, even

through he failed to allege that the defendants terminated him "solely" because of his

obesity.  Id. See also Jordan v. Western Distrib. Co., 286 F.Supp.2d 545, 550 (D.Md.

2003) (defendants' motion to dismiss the plaintiff's negligent retention claim denied,

finding that the complaint complied with Rule 8(a)(2) by providing fair notice of the

claim to the defendant and that the question of whether the plaintiff can establish facts to

support his claim is appropriately addressed at a later stage after the opportunity for

discovery); Pavent.v. Rand Whitney Realty Corp., No. 3:96CV01977, 1997 WL 527367

(D.Conn. July 17, 1997) (finding that, even though the plaintiff failed to state a factual

basis to support his allegation that the defendants' conduct was wanton and willful, she

nonetheless satisfied the liberal pleading requirements of Rule 8(a), which does not

require detailed factual averments).

     As the foregoing cases illustrate, whether the alleged conduct meets the standard

required to succeed on a claim for intentional infliction of emotional distress is a factual

determination to be made on a case-by-case basis.  If ever there was conduct that met the

requisite standard, it is presented here.  Moreover, the plaintiff should be afforded the

opportunity to develop facts through discovery to support this claim.

        2.     Negligent Infliction of Emotional Distress

     Defendants wrongly assert that the plaintiff failed to allege: (1) that the manner of

his termination was unreasonable; (2) conduct sufficient to meet the requisite standard of

unreasonableness announced by the Connecticut Supreme Court to sustain a claim for

negligent infliction of emotional distress; and (3) that any of the defendants should have

realized that their alleged conduct involved an unreasonable risk of causing emotional distress that might cause illness or bodily harm.  (Def.'s Mem. Supp. Dismiss at 27-37.)

The Complaint alleges that the defendants summarily terminated plaintiff's employment on a pretextual excuse that he misprescribed medications and that the defendants did so, knowing that he was in a severely depressed state.  These allegations are sufficient to put the defendants on notice of the claim for negligent infliction of emotional distress and the grounds on which it rests.  Consequently, the Complaint satisfies Federal Rule's liberal system of "notice pleading" that applies in this case.  See Fed.R.Civ.P. Rule 8(a)(2); Alfano v. Bridgeport, 373 F.Supp.2d, supra at 4.  Defendants' reliance, yet again, on the state court standards for pleading is mistaken.  Moreover, it is premature to dismiss the claim at this point.  Plaintiff should be given the opportunity to develop facts through discovery to support his claim for negligent infliction of emotional distress.  See Jordan v. Western Distrib. Co., 286 F.Supp.2d supra at 550; Pavent.v. Rand Whitney Realty Corp., No. 3:96CV01977, 1997 WL 527367 supra.

IV.    **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss be denied.

THE PLAINTIFF
JON M. FESSEL, M.D.


/s/ Judith A. Ravel
Judith A. Ravel
Federal Bar No. CT 07253
Judith A. Ravel Attorneys at Law
246 Goose Lane, Suite 246
Guilford, CT 06437
Phone: (203) 458-2300
Fax: (203) 458-8822
E-mail: JAR@jravel-law.com

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
AT BRIDGEPORT

JON M. FESSEL, M.D.                          CIVIL NO. 3:05-CV-01348-(SRU)

      **Plaintiff**

v.

YALE UNIVERSITY HEALTH SERVICES,
ALAN GREENGLASS, PAUL GENECIN,
MORESON KAPLAN, RAVI DURVASULA,
KATHERINE MATZKIN                            JANUARY 24, 2006

## CERTIFICATION OF SERVICE

I hereby certify that on January 24, 2006, a copy of the foregoing Memorandum of Law in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the courts' CM/ECF System.


                        /s/ Judith A. Ravel
                        Judith A. Ravel
                        Federal Bar No. CT 07253
                        Judith A. Ravel Attorneys at Law
                        246 Goose Lane, Suite 246
                        Guilford, CT 06437
                        Phone: (203) 458-2300
                        Fax: (203) 458-8822
                        E-mail: JAR@jravel-law.com

F:\General\CLIENT F-J\Fessel\Opposition Memo 01 24 06