UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JON M. FESSEL, M.D.                          :          CIVIL NO.:  3:05 CV 01348 (HBF)

     Plaintiff                              :

V                                                      :

YALE UNIVERSITY HEALTH              :
SERVICES, ALAN GREENGLASS,
PAUL GENECIN, KATHERINE MATZKIN,       :
RAVI DURVASULA,
KATHERINE MATZKIN                       :

     Defendants                           :          APRIL 14, 2007

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT**

     The defendant, Yale University Health Services, has moved for summary judgment

on Counts One, Two, Three, and Four of the plaintiff's complaint.[1]  This memorandum of

law is filed in support of that motion.

**I.     FACTUAL BACKGROUND**

     This case arises out of the plaintiff's employment with the defendant, Yale University

Health Services ("YUHS").  The plaintiff, an internist, was hired in 1985 by the defendant.

(Compl. ¶ 10.)  In 2003, the Drug Control Division of the State Department of Consumer

Protection conducted an investigation into prescriptions written by the plaintiff.  (Affidavit of

---

[1] The Court previously dismissed Counts Five and Six of the Complaint.  Accordingly, there are no claims pending against the individual defendants in this matter.

**DONAHUE, DURHAM & NOONAN, P.C.**
CONCEPT PARK   ●   741 BOSTON POST ROAD
GUILFORD, CONNECTICUT 06437
TEL:  (203) 458-9168  ●  FAX:  (203) 458-4424
JURIS NO. 415438

Katherine Matzkin at ¶ 4; Depo. Jon M. Fessel, M.D. June 28, 2007, at pp. 29-30.)[2]  Alerted by the governmental investigation, YUHS initiated an internal investigation.  (Affidavit of Katherine Matzkin at ¶ 4.)  The investigation revealed that the plaintiff had written dozens of prescriptions for two individuals with whom he did not have a doctor-patient relationship. The plaintiff wrote a total of 54 narcotics prescriptions for a man who had previously been his patient; by January of 2003, when the issue came to light, that individual had not been a patient of the YUHS for more than two years.  (Affidavit of Katherine Matzkin at ¶¶ 5, 8.) Dr. Fessel also wrote 14 prescriptions for narcotics for his medical assistant, with whom he had never had a doctor-patient relationship.  (Affidavit of Katherine Matzkin at ¶ 5.)  In each case, Dr. Fessel had prescribed narcotics without making any documentation in the individuals' medical charts.  (Affidavit of Katherine Matzkin at ¶ 5.)

The medical assistant's primary care physician, Dr. Daniel Geisser of the YUHS, was also prescribing narcotic pain medication to her, and he was attempting to wean her off the narcotics, since he believed she was becoming addicted to them.  (Affidavit of Katherine Matzkin at ¶ 6.)  Dr. Fessel did not communicate with Dr. Geisser regarding his decision to provide narcotics to Dr. Geisser's patient, nor did he place any notation in the patient's medical chart to indicate that he had prescribed the narcotics for her.   Without this information Dr. Geisser's efforts to wean his patient off addictive narcotics could not be successful.  (Affidavit of Katherine Matzkin at ¶ 7.)  Indeed, Dr. Fessel admitted at his deposition that it would have assisted Dr. Geisser if he had put a notation in the medical chart

---

[2] Relevant portions of the plaintiff's deposition are attached hereto as Exhibit 1.

when he was prescribing narcotics for her, and the plaintiff also acknowledged that he himself should have looked at the chart to see what medication she was taking before prescribing narcotic medication for her.  (Depo. Jon M. Fessel, M.D. June 28, 2007, at pp. 50, 52.)

At his deposition, Dr. Fessel admitted that he was incapable of working from January 16, 2003 (the day after the State first contacted YUHS), until December 14, 2004 when Dr. Fessel's disability payments ceased. (Depo, Jon M. Fessel, M.D. June 28, 2007, at pp. 26, 65.)  In fact, he stated that he was "very frightened during that year [prior to January, 2003] by the degree of difficulty  [he] was having functioning," both in and out of work.  (Depo. Jon M. Fessel, M.D. June 28, 2008, at p. 62.)

On January 27, 2003, Dr. Fessel met with members of the YUHS administration in order to address the concerns that had arisen as a result of Dr. Fessel's prescription writing practices.  (Affidavit of Katherine Matzkin at ¶ 10.)  Dr. Fessel has no recollection of what he said during the meeting of January 27, 2003. (Depo. Jon M. Fessel, M.D. June 28, 2008, at p. 99.)  Dr. Fessel acknowledged during the meeting on January 27, 2003 that he was aware that any prescription for a narcotic medication must be documented in the patient's medical chart. (Affidavit of Katherine Matzkin at ¶ 11.)  He also admitted that he had failed to document the prescriptions he had written for his medical assistant and for his former patient. Id.  Dr. Fessel further stated that he never spoke with his medical assistant's primary care physician, and he did not know that she was already receiving narcotic pain medication from her primary care physician.  Id.  The primary care physician at that point was Dr. Daniel Geisser, a

staff internist at YUHS whose office was several doors away from Dr. Fessel's office at YUHS. Dr. Fessel never communicated with Dr. Geisser about the fact that he was prescribing narcotic medication to one of Dr. Geisser's patients.  (Affidavit of Katherine Matzkin at ¶ 11.)  Dr. Fessel had written a total of 14 different prescriptions for the medical assistant, and 54 different prescriptions for the former patient without noting the prescriptions in either of their medical charts.  (Affidavit of Katherine Matzkin at ¶ 5.)   At no time during that meeting – or at any previous time – did Dr. Fessel suggest that his prescription writing practices were the result of any disability.  (Affidavit of Katherine Matzkin at ¶ 10.)

At the conclusion of the meeting on January 27, 2003, Dr. Fessel was informed that he had engaged in serious misconduct and that he would be terminated unless he decided to resign or retire.  Dr. Fessel was told that he should not make a decision immediately, but that he should think about it.  It was also suggested that he contact the Director of Benefits in order to obtain information on how his benefits would be impacted by the manner in which his employment was terminated.  (Affidavit of Katherine Matzkin at ¶ 13.)   Dr. Fessel indicated that he would consider the matter and get back to the members of the administration. (Affidavit of Katherine Matzkin at ¶ 14.)  The next communication from Dr. Fessel came by way of a letter dated February 4, 2003 from his lawyer, Attorney Judith Ravel.  (Affidavit of Katherine Matzkin at ¶ 15.)  See, Exhibit A to Matzkin affidavit.  The letter for the first time suggested that Dr. Fessel had a disability, i.e. depression, and sought an accommodation by way of a leave of absence.  (Depo. Jon M. Fessel, M.D. June 28, 2008, at p. 107.)  This was the first notice to YUHS that Dr. Fessel had a disability or that he

desired an accommodation.  (Affidavit of Katherine Matzkin at ¶ 15.)  The University then responded to Dr. Fessel's lawyer, indicating that his request for an accommodation was granted.  Instead of a discharge, he was given a medical leave of absence and the discharge was converted into a final written warning effective on January 27, 2003.  (Affidavit of Katherine Matzkin at ¶ 16)  See, Exhibit B to Matzkin affidavit.  Thereafter, Dr. Fessel was sent two different communications informing him that his medical leave of absence, in accordance with University policy, would expire in one year.    (Affidavit of Katherine Matzkin at ¶ 17.)   See, Exhibits C and D to Matzkin affidavit.  Dr. Fessel agreed in his deposition that he received each of those letters.  (Depo. Jon M. Fessel, M.D. June 28, 2008, at pp. 82-83.)  His leave of absence was in fact continued an additional one month beyond the normal 12 month limit under University policy, for the purpose of permitting him to complete his application for disability insurance benefits.  (Affidavit of Katherine Matzkin at ¶ 19.)  See, Exhibit F to Matzkin affidavit.  Dr. Fessel did not return to work within one year of the commencement of his leave of absence; in fact, he made no effort to return to YUHS at any time, even up to the present date.  (Affidavit of Katherine Matzkin at ¶ 18.)  See, Exhibit E to Matzkin affidavit.  Dr. Fessel has admitted that he suffered no economic loss as a result of the YUHS decision to initially terminate him and then place him on a medical leave of absence; he was incapable of employment at the time he was initially terminated. (Depo. Jon M. Fessel, M.D. June 28, 2008, at p. 134.)

Under the facts of the present case, the plaintiff is simply unable to establish the requirements for any of the remaining causes of action in the complaint.  Accordingly, summary judgment should enter in favor of Yale University Health Services.

## II.     LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates that summary judgment "be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  "An issue of fact is 'material' if it 'might affect the outcome of the suit under the governing law', while an issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  BTEC Turbines, LP v. Connecticut Light and Power Co., 2007 WL 3046257 * 4 (D.Conn. Oct. 17, 2007) (Burns, J.), citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Summary judgment must "be entered against a party 'who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  Id., quoting Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986).

"To survive summary judgment, the plaintiff must first establish a *prima facie* case of discrimination by a preponderance of the evidence."   Sample v. Wal-Mart Stores, Inc., 273 F.Supp.2d 185, 188 (D.Conn. 2003) (Eginton, J.), citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  "If [he] meets this *prima facie* burden, the burden of production then shifts to the defendant, which must rebut the presumption by articulating a legitimate,

non-discriminatory reason or reasons for its action. To meet its burden, the defendant need do no more than offer an explanation and the presumption raised by the plaintiff's *prima facie* case is rebutted and it drops from the case."   Id., citing St. Mary's Honor Center v. Hicks, 509 U.S. 502, 507 (1993). "The burden then shifts to the plaintiff, who must then show that the defendant's articulated legitimate, non-discriminatory reasons are false, and more likely than not discrimination was the real reason for the adverse employment action. The burden of proving intentional discrimination remains at all times with the plaintiff." Id., citing Sorrentino v. All Seasons Services, Inc., 245 Conn. 756, 767 (1998).

## III.   LEGAL ARGUMENT

### A.   Summary Judgment Must be Granted as to Counts One and Two Because the Plaintiff Cannot Prove That the Defendant Discriminated Against Him.

#### 1.   The Plaintiff Cannot Prove That YUHS Discriminated Against Him Because of His Age.

To establish a prima facie case of age discrimination, the plaintiff must show that "(1) at the relevant time the plaintiff was a member of the protected class; (2) the plaintiff was qualified for the job; (3) the plaintiff suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination."   Graves v. Finch Pruyn & Co., Inc., 457 F.3d 181, 187 (2d Cir. 2006). There is no doubt that the plaintiff satisfies the first element of the prima facie case, as he was over 40 years old at the time.   However, the plaintiff cannot establish the remaining three elements of the prima facie case.

As to the second element, the plaintiff was not qualified for his position because he was incapable of working.  The plaintiff admitted during his deposition that he was incapable of practicing medicine as of January, 2003.  (Depo. Jon M. Fessel, M.D. June 28, 2007, at p. 64.)  His psychiatrist also thought that the plaintiff was incapable of practicing medicine; in fact, he did not authorize the plaintiff to return to work until December of 2004.  (Depo. Jon M. Fessel, M.D. June 28, 2007, at pp. 64-65.)   The plaintiff himself recognized that his performance was noticeably hindered, and he was having difficulty functioning at work. (Depo. Jon M. Fessel, M.D. June 28, 2007, at p. 62.)  The plaintiff wrote, as he described them, "unusual prescriptions" for two individuals.  (Depo. Jon M. Fessel, M.D. June 28, 2007, at p. 115.)  In January of 2003, the plaintiff was questioned by officers from the Drug Control Division of the State Department of Consumer Protection about multiple prescriptions for the aforementioned individuals.  (Depo. Jon M. Fessel, M.D. June 28, 2007, at pp. 29-30.)  The plaintiff had prescribed a narcotic for his medical assistant without having a doctor's visit with her or making sure that there was no contraindication to her taking the medication.  (Depo. Jon M. Fessel, M.D. June 28, 2007, at pp. 45, 51-52.)  He also continued to prescribe narcotic medication for an individual who was no longer his patient.  (Depo. Jon M. Fessel, M.D. June 28, 2007, at p. 72.)   These actions violated the standard of care expected of physicians at YUHS.  (Affidavit of Katherine Matzkin at ¶ 12.)  See, Exhibits B and C to Matzkin affidavit.  The plaintiff admitted, and his conduct confirmed, that he was not able to practice medicine in 2003.  Therefore, he was not qualified for his position as an internist at YUHS.

Not only was the plaintiff not qualified to continue working as an internist, but he also never suffered an adverse employment action.  On January 16, 2003, the plaintiff realized that he was incapable of working and did not go to work for two weeks.  (Depo. Jon M. Fessel, M.D. June 28, 2007, at p. 65.)  On January 27, 2003, he had a meeting with the YUHS administration concerning the prescriptions that he had written for the two individuals mentioned above.  (Depo. Jon M. Fessel, M.D. June 28, 2007, at pp. 99-100; Affidavit of Katherine Matzkin at ¶ 10.)  At that meeting, YUHS gave him the option to resign, retire, or be fired because he had violated the standard of care required of a physician by prescribing large quantities of narcotics to individuals who were not his patients, without documenting their medical charts and without informing their physicians.  (Affidavit of Katherine Matzkin at ¶¶ 12-13.)  After the meeting, the plaintiff spoke with his attorney who then requested that the plaintiff be placed on medical leave because of his alleged disability.  See, Exhibit A to Matzkin affidavit.  The plaintiff never informed the defendant of his alleged disability before being given the choice to resign, retire, or be fired on January 27, 2003.  (Affidavit of Katherine Matzkin at ¶ 15.)  Although not legally obligated to do so, YUHS converted the plaintiff's discharge into a final warning and placed him on medical leave effective January 27, 2003.  See, Exhibits B and C to Matzkin affidavit.  Thus, the plaintiff never experienced an adverse employment action because he was not fired; rather, he was placed on medical leave as he had requested.

The plaintiff's employment was ultimately terminated by his failure to return to work within one year following the commencement of his medical leave.  The circumstances surrounding the termination do not give rise to an inference of discrimination.  In accordance with the Yale University Management and Professional Manual, the plaintiff was entitled to a leave of absence for one year.  See, Exhibit E to Matzkin affidavit.  The plaintiff was explicitly told in writing on two occasions that his position would only be held until January 26, 2004.  See, Exhibits C and D to Matzkin affidavit.  If he did not return to work, then he would be considered to have voluntarily resigned.  See, Exhibit D to Matzkin affidavit. YUHS even extended the plaintiff's leave for another month, until February 26, 2004, in order to accommodate the plaintiff's request that he be allowed to apply for disability insurance benefits.  (Affidavit of Katherine Matzkin at ¶ 19.)  See, Exhibit F to Matzkin affidavit.  The plaintiff did not return to work because he was not medically capable of doing so in February of 2004.  (Depo. Jon M. Fessel, M.D. June 28, 2007, at p. 83.)  As a result, per the Yale Management and Professional Manual, YUHS ceased holding his position for him, and the plaintiff was no longer an active employee after February 26, 2004.  (Affidavit of Katherine Matzkin at ¶ 18.)  The termination of the plaintiff's employment resulted because the plaintiff was unable to return to work at the end of his medical leave.  These circumstances do not give rise to an inference of discrimination.  Courts have routinely held that compliance with neutral employment policies does not give rise to an inference of discrimination.  Lambert v. Genesee Hosp., 10 F.3d 46, 58 (2d Cir. 1993); Mars v. Service Now For Adult Persons (S.N.A.P.), 305 F.Supp.2d 207, 214 (E.D.N.Y. 2004.); Jackson v.

<u>Nor Loch Manor HCF</u>, 134 Fed.Appx. 477, 478 (2d Cir. 2005) (Summary Order).  Since the plaintiff cannot prove that he was qualified for his position at YUHS, that he suffered an adverse employment action, or that the adverse employment action arose under circumstances that gave rise to an inference of discrimination, the plaintiff cannot establish a <u>prima</u> <u>facie</u> case of discrimination.  Even if the plaintiff could establish a <u>prima</u> <u>facie</u> case, his age discrimination claim cannot survive summary judgment because the plaintiff cannot prove that the defendant's articulated reason for his termination was pretextual.

In an age discrimination case, "[i]f the employer articulates an age-neutral reason for the termination, plaintiff must bear the ultimate burden of proving that the employee's age was the real reason for the discharge."  <u>Viola v. Philips Medical Systems of North America</u>, 42 F.3d 712, 716 (2d Cir. 1994).  "The plaintiff has the burden of proving that age was the determining factor in his discharge in the sense that, but for his employer's motive to discriminate against him because of age, he would not have been discharged."  (Internal quotations omitted.)  <u>Pena v. Brattleboro Retreat</u>, 702 F.2d 322, 323 (2d Cir. 1983).  Furthermore, the District of Connecticut has held that in order to overcome summary judgment in an age discrimination case where the defendant has articulated a legitimate non-discriminatory reason for the challenged action, a plaintiff must present *substantial evidence* of pretext.  <u>Graham v. Renbrook School</u>, 692 F. Supp. 102, 107 (D. Conn. 1988) (granting summary judgment on age discrimination claim because plaintiff failed to adduce substantial evidence of pretext).

YUHS terminated the plaintiff's employment because he did not return to work after his one year medical leave expired.  This action was in accordance with Yale University policy, of which the plaintiff was explicitly notified. <u>See</u>, Exhibits, C, D, and E to Matzkin affidavit.  There is simply no evidence that the defendant's articulated reason is pretextual. In fact, the plaintiff admitted that he does not have any evidence of discrimination.  (Depo. Jon M. Fessel, M.D. June 28, 2007, at pp. 88, 133.)  He is unaware of any other individuals in similar situations who were treated differently or better than he was treated.  (Depo. Jon M. Fessel, M.D. June 28, 2007, at pp. 84, 86-87.)  Furthermore, the plaintiff never inquired about returning to work at YUHS when he felt capable of doing so, nor has he applied for any vacancies at YUHS.  (Depo. Jon M. Fessel, M.D. June 28, 2007, at pp. 91-92.)  The plaintiff cannot present substantial evidence that the reason given by YUHS for the termination of his employment, namely that he failed to return to work at the expiration of his medical leave, is a pretext for age discrimination.  Therefore, the motion for summary judgment should be granted as to Count One.

     2.    <u>The Plaintiff Cannot Prove that the Defendant Discriminated Against Him Because of His Disability.</u>

"To make out a *prima facie* case under the ADA, a plaintiff must establish that:  (1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." <u>Giordano v. City of New York</u>, 274 F.3d 740, 747 (2d Cir. 2001)  YUHS admits that it is subject to the ADA and that the plaintiff has sufficient evidence to make a triable

issue as to whether he was disabled within the meaning of the ADA, since he has claimed that his prescription writing practices were the result of depression, which is recognized as a disability under the ADA and Conn. Gen. Stat. § 46a-60.[3]   MacGovern v. Hamilton Sunstrand Corp., 170 F.Supp.2d 301, 308 (D.Conn. 2006); Conte v. New Haven Bd. of Educ., 2003 WL 21219371 *3 (Conn.Super. May 15, 2003).  However, the plaintiff cannot prove the remaining elements of the prima facie case.

As explained above, the plaintiff was not qualified for his position in January of 2003.  Indeed, according to the plaintiff and his psychiatrist, the plaintiff was incapable of practicing medicine from January of 2003 until December of 2004.  (Depo. Jon M. Fessel, M.D. June 28, 2007, at p. 64.)  The plaintiff was having difficulty functioning at work and his notes were substandard.  In addition, he wrote prescriptions for high doses of narcotics for two individuals who were not his patients, which caused the State to launch an investigation.  (Depo. Jon M. Fessel, M.D. June 28, 2007, at pp. 29-30, 56, 62, 115.)  When Dr. Fessel, through his attorney, informed the defendant of his disability and requested a medical leave, the defendant complied with his request.  (Affidavit of Katherine Matzkin at ¶ 16.)  See, Exhibit B to Matzkin affidavit.  Of course, the accommodation requested did not allow the plaintiff to perform the essential functions of his job since he was unable to work at all.  Thus, the plaintiff was not qualified, either with or without an accommodation, for his position.

---

[3] It does bear noting that the plaintiff claims that he first became aware of his depression the day after learning that the State had initiated an investigation into his prescription writing practices.

Moreover, the plaintiff did not suffer an adverse employment action because of his disability.  The plaintiff first requested an accommodation in the form of a medical leave through his attorney in a letter dated February 4, 2003.  (Affidavit of Katherine Matzkin at ¶ 15.)  This request was made after the plaintiff violated the standards expected of a physician and was given the option on January 27, 2003 to retire, resign, or be fired.  Thus, the defendant was under no legal obligation to provide an accommodation because it had no knowledge of the plaintiff's disability or the need for accommodation on January 27, 2003.  See, Worthington v. City of New Haven, 1999 WL 958627 *13 (D.Conn. October 5, 1999) ("An employer has no duty to provide an accommodation for a disability of which it has no knowledge.").  Nevertheless, the defendant granted the plaintiff's request for a medical leave of absence.  See, Exhibits B and C to Matzkin affidavit.  The plaintiff never suffered an adverse employment action because he was not fired.  Not only did YUHS not discriminate against the plaintiff because of his disability, it actually granted the only accommodation the plaintiff ever requested, an accommodation it was under no legal obligation to provide.

The plaintiff was ultimately considered to have voluntarily resigned for reasons having nothing to do with his disability.  The plaintiff's employment was terminated because the plaintiff never returned to work after his medical leave ended.  Under Yale University policy, an employee who fails to return from medical leave is considered to have voluntarily resigned.  See, Exhibit E to Matzkin affidavit, at §§ 405.2 and 405.5.  The plaintiff's medical leave was effective on January 27, 2003, the date on which he was informed that he could resign, retire, or otherwise be fired.  See, Exhibit C to Matzkin affidavit.  He was informed

on February 24, 2003 and again on January 5, 2004 that his medical leave would end on January 26, 2004 and his position would no longer be held after that date.  See, Exhibits C and D to Matkin affidavit.  The plaintiff was also informed that he needed to contact the defendant at least two weeks prior to January 26, 2004 if he wished to return to work.  See, Exhibits D and E to Matzkin affidavit.  The plaintiff was ultimately considered to have voluntarily resigned because he did not return to his employment after his medical leave expired.  (Affidavit of Katherine Matzkin at ¶ 18.)  Indeed, the plaintiff never requested an additional extension of his leave of absence, beyond the one month which was granted to accommodate his desire to obtain disability insurance benefits.  (Affidavit of Katherine Matzkin at ¶ 19.)  It is important to remember that an employer is not obligated to seek out an employee and inquire as to whether the employee requests an accommodation; it is up to the employee to request an accommodation.  See, Graves v. Finch Pruyn & Co., 457 F.3d 181, 184-85 (2d Cir.2006); Rodal v. Anesthesia Group of Onondaga, P.C., 369 F.3d 113, 120 (2d Cir.2004).  See also, 29 C.F.R. pt. 1630 App. § 1630.9.  In the present case, the plaintiff's employment terminated because he did not return to work at the end of his medical leave of absence; his disability had nothing to do with  the termination of his employment.  Indeed, the plaintiff admitted in his deposition that he has no evidence that the defendant discriminated against him based on his disability.  (Depo. Jon M. Fessel, M.D. June 28, 2007, at pp. 84, 136.)  Consequently, the defendant's motion for summary judgment should be granted as to Count Two.

Furthermore, even if the plaintiff had been able to make out a <u>prima</u> <u>facia</u> case, the plaintiff has failed to offer any evidence that the articulated reason for his termination – the neutral medical leave policy – was pretextual.  <u>See</u>, <u>Sista v. CDC Ixis North America, Inc.</u>, 445 F.3d 161, 169 (2d Cir. 2006) ("A plaintiff must establish a prima facie case; the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext."); <u>Conge v. Sikorsky Aircraft Corp.</u>, 2007 WL 4365676 *5 (D.Conn. December 11, 2007) (Dorsey, J.) ("If the defendant then proffers a legitimate, nondiscriminatory reason for the challenged employment action, the presumption of discrimination drops out, and the plaintiff must prove that the legitimate reasons offered by the defendant were not its true reasons but were a pretext for discrimination.")  In the instant case, the plaintiff's admission in his deposition that he has no evidence of discrimination based on disability provides sufficient reason for a conclusion that the plaintiff is unable to offer any evidence to establish that the reason for the termination was pretextual. (Depo. John M. Fessel, M.D., June 28, 2007, at p. 88.) Accordingly, the Court should grant defendant's motion for summary judgment as to Count Two.

**B.**     **Summary Judgment Must Be Granted as to Counts Three and Four Because YUHS Complied With Yale University Policies.**

1.     YUHS Did Not Breach Any Contract.

The plaintiff claims that YUHS breached the employment contract by terminating him.  It is well established that the elements of a breach of contract action are "the formation of an agreement, performance by one party, breach of the agreement by the other party and damages."  Rosato v. Mascardo, 82 Conn. App. 396, 411 (2004); Bouchard v. Sundberg, 80 Conn. App. 180, 189 (2003); Shah v. Cover-it, Inc., 86 Conn. App. 71 (2004);  Findell v. Koos, 2002 Conn. Super. LEXIS 887 (March 11, 2002) (Berger, J.) ("In an action for breach of contract, the plaintiff must plead: 1) the existence of a contract or agreement; 2) the defendant's breach of the contract or agreement; and 3) damages resulting from the breach.")

The plaintiff cannot satisfy the elements of a claim for breach of contract because he cannot prove that the defendant breached the contract or that he suffered damages.[4]  The Yale manual states, in Sections 405.2 and 405.5, that an employee who does not return to work within one year following commencement of his or her medical leave will be considered to have voluntarily resigned.  See, Exhibit E to Matzkin affidavit.  As explained above, the plaintiff was granted the requested medical leave of absence effective January 27, 2003.  See, Exhibits B and C to Matzkin affidavit.  The plaintiff was informed that if he wished to return to work, he needed

---

[4] Plaintiff does not claim any actual contract with YUHS.  Rather, he claims that the employment manual constituted a contract.  See, Cweklinsky v. Mobil Chemical Co., 364 F.3d 68, 76 (2d Cir. 2004); Cowen v. Federal Exp. Corp., 25 F.Supp.2d 33, 36 (D.Conn. 1998) (Nevas, J.).  YUHS will assume for the purpose of this motion that the employee manual in this case could be characterized as a contract.

to contact the defendant two weeks prior to the expiration of his one year medical leave on January 26, 2004.  See, Exhibit D to Matzkin affidavit.  He was also informed that if he did not return to work, he would be considered to have voluntarily resigned per University policy.  See, Exhibit D to Matzkin affidavit.  The plaintiff, fully aware of the consequences of not returning to work after the one year medical leave, never contacted the defendant about returning to work, either before or after his medical leave ended.  (Depo. Jon M. Fessel, M.D. June 28, 2007, at p. 79; Affidavit of Katherine Matzkin at ¶ 18.)   Since YUHS abided by its manual when it considered the plaintiff to have voluntarily resigned when he did not return to work, there was no breach of contract.

Just as the plaintiff cannot prove that the defendant deviated from the employment manual, he also cannot provide any evidence of damages.  From the beginning of his disability leave on January 27, 2003 up until November of 2003, the plaintiff was paid a full salary.  The plaintiff then received disability payments from November of 2003 through December 14, 2004.  (Depo. Jon M. Fessel, M.D. June 28, 2007, at pp. 76-77.)  In fact, the plaintiff admitted at his deposition that he did not suffer any economic loss from the temporary discharge that was converted into a final warning effective January 27, 2003 when the plaintiff requested medical leave.  (Depo. Jon M. Fessel, M.D. June 28, 2007, at p. 134.)  Furthermore, the plaintiff admitted that his economic loss only began after he stopped receiving disability payments in December of 2004.  (Depo. Jon M. Fessel, M.D. June 28, 2007, at p. 135.)  Since the plaintiff was not an employee of YUHS as of February of 2004 and his economic loss did not begin until December of 2004, that loss cannot be contributed to the defendant's actions.  Therefore, the

plaintiff cannot recover on his breach of contract claim because he has suffered no damages as a result of the defendant's actions.[5]

> 2. The Plaintiff Cannot Prove that the Defendant Breached the Covenant of Good Faith and Fair Dealing.

Under Connecticut law, there cannot be a breach of the covenant of good faith and fair dealing in the absence of a breach of contract. Landry v. Spitz, 102 Conn.App. 34, 47 (2007). In Harris v. Bradley Memorial Hosp. and Health Center, Inc., 2007 WL 2570427 *1 (Conn.Super. Aug. 20), the plaintiff's suit arose out of the defendant's summary suspension of the plaintiff's privileges to admit patients to surgery.  The court found that the defendants had not breached the contract.  The court then addressed the claim of a breach of the covenant of good faith and fair dealing, stating, "[B]ecause the defendant did not breach the contract, there can be no valid cause of action for breach of the implied covenant of good faith." Id. at *6. See also, Lopiano v. Gedney, 2004 WL 2943139 *7 (Conn.Super. Nov. 15) ("Because [the defendant] did not breach its contract, it did not breach any implied duty of good faith and fair dealing."); See also, Security Ins. Co. of Hartford v. Trustmark Ins. Co., 2002 WL 32500873 * 4 (D.Conn. Aug. 22) ("Connecticut has not, and would not, establish a cause of action in tort for an implied breach of the covenant of good faith and fair dealing separable from the [breach of] contract claim.")

---

[5] Unlike a civil rights claim, proof of damages is an essential element of a breach of contract claim under Connecticut law.  Nominal damages may not be awarded for breach of contract.  See Rosato v. Mascardo, 82 Conn. App. 396, 411 (2004).

Even if there were evidence of a breach of contract in the present case, the plaintiff cannot prove that the defendant acted in bad faith when it temporarily discharged him before granting his belatedly requested medical leave:

> An action for breach of the covenant of good faith and fair dealing requires proof of three essential elements, which the plaintiff must duly plead: first, that the plaintiff and the defendant were parties to a contract under which the plaintiff reasonably expected to receive certain benefits; second, that the defendant engaged in conduct that injured the plaintiff's right to receive some or all of those benefits; and third, that when committing the acts by which it injured the plaintiff's right to receive benefits it reasonably expected to receive under the contract, the defendant was acting in bad faith.

Austrian, M.D. v. United Health Group, Inc., 2007 WL 2363301 *16 (Conn.Super. July 16), quoting Ruiz v. Dunbar Armored, Inc., 2005 WL 1869028 *4 n.3 (Conn.Super. July 19).

The plaintiff has no evidence that the defendant acted in bad faith. First, the defendant had cause to fire the plaintiff when it discovered through the Drug Control Division of the State Department of Consumer Protection and the defendant's own investigation that the plaintiff was writing prescriptions for high doses of narcotics for two individuals who were not his patients and was failing to document those prescriptions in the individuals' medical charts. Second, even though it was under no legal obligation to do so, the defendant converted the plaintiff's discharge into a final warning and granted the plaintiff the medical leave he requested effective on the date that he would have been fired, January 27, 2003. (Affidavit of Katherine Matzkin at ¶ 16.) See, Exhibits B and C to Matzkin affidavit. This action negates any possible inference of bad faith on the part of the defendant. Third, the defendant followed Yale University policy when it considered him as having

voluntarily resigned as of February of 2004.  See, Sections 405.2 and 405.5 of Exhibit E to

Matzkin affidavit.  Finally, the plaintiff admitted in his deposition that he has no evidence

that he was treated differently from any similarly situated employee at YUHS.  (Depo. Jon

M. Fessel, M.D. June 28, 2007, at pp. 86-87.)  Since the defendant followed University

policy in all of its dealings with the plaintiff, the plaintiff has failed to provide any evidence

of bad faith.  Therefore, the Court should grant the defendant's motion for summary

judgment as to Count Four.

**IV.**     **CONCLUSION**

In his deposition, the plaintiff admitted that he has no evidence of discrimination

based on his age or disability.  In addition, the facts indicate that the defendant followed Yale

University policy in all of its dealings with the plaintiff.  Since the plaintiff has no evidence

from which he could prove that the defendant discriminated against him or breached his

contract or the covenant of good faith and fair dealing, the defendant's motion for summary

judgment should be granted.

THE DEFENDANT
YALE UNIVERSITY HEALTH
SERVICES,


By _____/s/_____
        Patrick M. Noonan (ct00189)
        Donahue, Durham & Noonan, P.C.
        741 Boston Post Road
        Guilford, CT 06437
        203-458-9168
                **CERTIFICATION**

21

I hereby certify that, on the above-written date, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.
John R. Williams, Esquire

jrw@johnrwilliams.com

_____/s/_____
Patrick M. Noonan