UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JON M. FESSEL, M.D. | : | CIVIL NO.:  3:05 CV 01348 (HBF) |
| Plaintiff | : | |
| V | : | |
| YALE UNIVERSITY HEALTH SERVICES, ALAN GREENGLASS, PAUL GENECIN, MORESON KAPLAN, RAVI DURVASULA, KATHERINE MATZKIN | : : : | |
| Defendants | : | April 14, 2008 |

**DEFENDANT'S LOCAL RULE 56(a)(1) STATEMENT**

Defendant Yale University Health Services (hereinafter "YUHS") submits that the following facts are not in dispute:

1.   The plaintiff was hired by YUHS in 1985.  (Compl. ¶ 10.)

2.   In January of 2003, the Drug Control Division of the State Department of Consumer Protection conducted an investigation into prescriptions for narcotics written by the plaintiff.  (Affidavit of Katherine Matzkin at ¶ 4; Depo. Jon M. Fessel, M.D. June 28, 2007, at pp. 29-30.)

3.   After learning of the State's investigation, YUHS initiated an internal investigation into the prescriptions for narcotics written by the plaintiff.  (Affidavit of Katherine Matzkin at ¶ 4.)

4.      The YUHS investigation revealed that the plaintiff had written dozens of prescriptions for two individuals with whom he did not have a doctor-patient relationship. The plaintiff wrote a total of 54 prescriptions for a man who had previously been his patient; by January of 2003, when the issue came to light, that individual had not been a patient of the YUHS for more than two years.  He also wrote 14 prescriptions for narcotics for his medical assistant, with whom he never had a doctor-patient relationship.  In each case, Dr. Fessel had prescribed narcotics for the two individuals without making any documentation in their medical charts.  (Affidavit of Katherine Matzkin at ¶¶ 5, 8.)

5.      The medical assistant's primary care physician, Dr. Geisser of the YUHS, was also prescribing narcotic pain medication to her, and he was attempting to wean her off the narcotics, since he believed she was becoming addicted to them.  Dr. Fessel did not communicate with Dr. Geisser regarding his decision to provide narcotics to Dr. Geisser's patient, nor did he place any notation in the patient's medical chart to indicate that he had prescribed the narcotics for her.  Without this information, Dr. Geisser's efforts to wean his patient off addictive narcotics could not be successful.  (Affidavit of Katherine Matzkin, at ¶ 6-7.)

6.      Dr. Fessel admitted at his deposition that it would have assisted Dr. Geisser if he had put a notation in the medical chart when he was prescribing narcotics for her, and the plaintiff also acknowledged that he himself should have looked at the chart to see what medication she was taking before prescribing narcotic medication for her.  (Depo. Jon M. Fessel, M.D. June 28, 2007, at pp. 50, 52.)

7.      The plaintiff violated the standard of care expected of physicians when he wrote prescriptions for two individuals with whom he did not have a doctor-patient relationship.  (Affidavit of Katherine Matzkin, at ¶ 12; Exhibits B and C to Matzkin affidavit.)

8.      The plaintiff was having difficulty functioning both in and out of work for the year prior to January of 2003.  In fact, the plaintiff admitted that he was incapable of practicing medicine from January 16, 2003 through December 14, 2004.  (Depo, Jon M. Fessel, M.D. June 28, 2007, at pp. 26, 62, 64-65.)

9.      On January 27, 2003, the plaintiff met with members of the YUHS administration in order to address the concerns that had arisen as a result of Dr. Fessel's prescription writing practices.  (Affidavit of Katherine Matzkin at ¶ 10; Depo. Jon M. Fessel, M.D. June 28, 2007, at pp. 99-100.)

10.     Dr. Fessel acknowledged during the meeting on January 27, 2003 that he was aware that any prescription for a narcotic medication must be documented in the patient's medical chart.  He also admitted that he had failed to document the prescriptions he had written for his medical assistant and for his former patient.  Dr. Fessel further stated that he never spoke with his medical assistant's primary care physician, and he did not know that she was already receiving narcotic pain medication from her primary care physician.  (Affidavit of Katherine Matzkin at ¶ 11.)

11.     At no time during that meeting – or at any previous time – did Dr. Fessel suggest that his prescription writing practices were the result of any disability. (Affidavit of Katherine Matzkin at ¶ 10.)

12.     The YUHS administration concluded that the plaintiff had violated the standard of care required of a physician and gave the plaintiff the option to resign, retire, or be fired on January 27, 2003. (Affidavit of Katherine Matzkin at ¶¶ 12, 13.)

13.     Dr. Fessel was told that he should not make the decision immediately, but that he should think about it. It was also suggested that he contact the Director of Benefits in order to obtain information on how his benefits would be impacted by the manner in which his employment was terminated. (Affidavit of Katherine Matzkin at ¶ 13.)

14.     After being given the option to resign, retire, or be fired, the plaintiff, through counsel, informed the defendants by way of a letter dated February 4, 2003 that he was suffering from depression and requested a medical leave of absence. This was the first notice to YUHS that Dr. Fessel claimed a disability or that he desired an accommodation. (Affidavit of Katherine Matzkin at ¶ 15; Exhibit A to Matzkin affidavit.)

15.     Although not legally obligated to do so, the defendants granted the plaintiff a medical leave and converted his discharge into a final written warning effective on January 27, 2003. (Affidavit of Katherine Matzkin at ¶ 16; Exhibits B and C to Matzkin affidavit.)

16.     YUHS policy requires an employee to return to work after the expiration of his or her medical leave, or otherwise be considered to have voluntarily retired. (Exhibit E to Matzkin affidavit at §§ 405.2 and 405.5)

17. Dr. Fessel was sent two different communications informing him that his medical leave of absence would expire after one year on January 26, 2004. He was also told that if he wished to return to work, he needed to contact YUHS two weeks prior to the expiration of his medical leave. (Affidavit of Katherine Matzkin at ¶ 17; Exhibits C and D to Matzkin affidavit.)

18. Dr. Fessel's leave of absence was continued until February 26, 2004, an additional month beyond the normal 12 month limit under University policy, for the purpose of permitting him to complete his application for disability insurance benefits. (Affidavit of Katherine Matzkin at ¶ 19; Exhibit F to Matzkin affidavit.)

19. The plaintiff did not return to work within one year of the commencement of his leave of absence because he was not medically capable of doing so. In addition, the plaintiff never asked to return to work or inquired about returning to work at YUHS when he felt capable of doing so. (Depo. Jon M. Fessel, M.D. June 28, 2007, at pp. 83, 91-92; Affidavit of Katherine Matzkin at ¶ 18.)

20. Since the plaintiff did not return to work following his medical leave, he was considered to have voluntarily resigned and was no longer an active employee after February 24, 2006. (Affidavit of Katherine Matzkin at ¶ 18.)

21. The plaintiff did not suffer any economic damages as a result of the YUHS decision to initially terminate him and then place him on medical leave of absence. His economic loss only began after he stopped receiving disability payments in December of 2004. (Depo. Jon M. Fessel, M.D. June 28, 2008, at p. 134.)

22.     The plaintiff has no evidence that the defendants discriminated against him because of his age or disability or that he was treated differently from other employees in similar situations.  (Depo. Jon M. Fessel, M.D. June 28, 2007, at pp. 84, 86-88, 133, 136.)

        THE DEFENDANTS
        YALE UNIVERSITY HEALTH
        SERVICES, ALAN GREENGLASS,
        PAUL GENECIN, MORESON KAPLAN,
        and KATHERINE MATZKIN,


By _____/s/_____
        Patrick M. Noonan (ct00189)
        Donahue, Durham & Noonan, P.C.
        741 Boston Post Road
        Guilford, CT 06437
        203-458-9168

## **CERTIFICATION**

I hereby certify that, on the above-written date, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.
John R. Williams, Esquire

    jrw@johnrwilliams.com


       _____/s/_____
       Patrick M. Noonan